## MAGRANE v. ST. LOUIS & SUBURBAN RAILWAY COMPANY, Appellant.

**Division One, June 20, 1904.**

1. **NEGLIGENCE: Degrees.** There are no degrees of negligence. There are degrees of care, and a failure to exercise the proper degree of care that the law requires is negligence.

2. **———: Common Carrier: Utmost Care Possible: Harmless Error.** Plaintiff, a passenger on a street car, was injured by the collision of the car on which he was riding with another car going in the opposite direction on the same track. The court told the jury that the company owed to him the duty, "as far as it is capable by human care and foresight," to carry him safely, and "is responsible for all injury resulting to him from any, even the slightest, neglect or negligence." *Held*, that this instruction imposed a higher degree of care than the law requires, being the utmost care that human imagination can conceive, whereas the care which the common carrier must give for the safety of a passenger is the highest degree of care that can reasonably be expected of prudent, skillful and experienced men engaged in the same business. But, nevertheless, the judgment will not be reversed in this case because such instruction was given, since under the evidence the com-

pany was prima facie guilty of negligence, and there was no evidence tending to overcome it.

3. ——: ——: ——: **Copying Instructions From Opinions.** It is not always safe to take an excerpt from an opinion in another case and embody it in an instruction, because the opinion is addressed to lawyers, while the instruction is addressed to laymen.

4. ——: ——: **Collision of Cars: Jumping of Passengers.** Where the passenger is injured by being pushed off of the car by the rush of other panic-stricken passengers trying to escape from the result of an imminent collision, the injury is, in legal contemplation, the effect of the collision.

5. ——: ——: ——: **Contributory Negligence: Standing on Platform.** The fact that the passenger was standing on the platform at the time the collision was impending, does not show him guilty of negligence, if his standing there was made necessary by the crowded condition of the car. That position did impose on him the duty of exercising the increased care that its increased danger entailed, but it did not alone make his act negligent; on the contrary, his position there being made necessary by the crowded condition of the car, it imposed on the company the corresponding duty to handle the car with increased care in view of his exposed condition.

6. ——: **Instructions: Reference to Petition.** An instruction should not refer the jury to the petition to ascertain the issues in the case; especially should it not do so where it counts on more than one act of negligence. But an instruction containing that error will not work a reversal, if on the evidence of both plaintiff and defendant the defendant is liable.

7. ——: ——: **Negligence Undefined.** An instruction should not submit the question of negligence to the jury without instructing them as to what constitutes negligence. The term negligence should either be defined in some instruction, or the jury should be required to determine whether in doing the act complained of the defendant observed the degree of care which the law imposes.

8. ——: ——: **Collision: Presumption.** It is not error, in a suit by a passenger for injuries received through a collision of cars, to refuse an instruction to the effect that "the mere fact that the collision occurred raises no presumption of negligence on the part of" the company.

9. ——: **Injuries Charged: Proof of Others.** The petition charged permanent injuries to plaintiff's knee and permanent injuries to his nervous system, but contained no charge that the injury culminated in any particular disease. At the trial

he was permitted to show permanent injuries to his eyesight, and insomnia, and while his physician testified that injuries to the nervous system will produce subjective symptoms like impairment of vision and insomnia, he did not say that he attributed those things to the injury to the knee, nor were those diseases traced back to the accident. *Held*, that the receiving of this evidence in reference to impairment of eyesight and insomnia, over the objection of defendant, was error, but on respondent's motion for leave to amend the petition, it is held that on the filing of a *remittitur* of one-third of the verdict, which was for $7,500, the judgment will be affirmed.

Appeal from St. Charles Circuit Court.—*Hon. E. M. Hughes*, Judge.

AFFIRMED ON CONDITION.

*McKeighan & Watts, Robert A. Holland, Jr.,* and *Jefferson Chandler* for appellant.

(1) The court erred in giving instruction 1 asked by plaintiff. Said instruction is erroneous: (a) Because it imposes upon defendant too high a degree of care in the operation of its cars. Jackson v. Railroad, 118 Mo. 224; Jacquin v. Cable Co., 57 Mo. App. 320; Hite v. Railroad, 130 Mo. 132. (b) Because it is based upon the theory that plaintiff was injured by the collision of the cars. Feary v. Railroad, 162 Mo. 75; Chitty v. Railroad, 148 Mo. 64; McManamee v. Railroad, 135 Mo. 440; Waldheir v. Railroad, 71 Mo. 314; McCarty v. Hotel Co., 144 Mo. 397. (c) Because it states that when a passenger suffers injury by a collision resulting from two cars being run in opposite directions on the same track, the presumption is that it was occasioned by some negligence on the part of the defendant railroad, and the burden is cast upon the defendant to rebut this presumption of negligence and establish the fact that there was no negligence on its part, etc. Feary v. Railroad, 162 Mo. 75. (d) Because it utterly ignores the question of contributory negligence on the part of plaintiff. (e) Because it states that defendant is responsible for injuries to plaintiff resulting from any

negligence.    (2) The court erred in giving instruction 2 asked by plaintiff. Said instruction states, in effect, that if the jury believe from the evidence that the plaintiff was exercising ordinary care, he is entitled to recover, unless the defendant has proven by a preponderance of the evidence that the accident happened from causes beyond its control. The burden of proof is not upon the defendant to show by a preponderance of the evidence that the accident happened from causes beyond its control.    (3)    The court erred in giving instruction 6 at the instance of the plaintiff.  (a)  Said instruction is erroneous in that it allows plaintiff to recover for any negligence on the part of defendant, whereas, under the pleadings, he is entitled to recover only in case the jury believe from the evidence that plaintiff had established the particular acts of negligence alleged. The latter part of this instruction predicates recovery if the collision in question was due to any negligence on the part of the defendant. Under the Feary case, supra, it was clearly erroneous to allow plaintiff to recover for any negligence, when he had limited himself to specific allegations of negligence in his petition. Chitty v. Railroad, 148 Mo. 64; McManamee v. Railroad, 135 Mo. 440; Waldheir v. Railroad, 71 Mo. 314; McCarty v. Hotel Co., 114 Mo. 397.  (b) It is also erroneous in that it is based upon the idea that plaintiff was injured by a collision of the cars. This is erroneous because there is no evidence upon which to predicate such a theory. The evidence in fact shows that he jumped or was pushed from the car prior to the collision. Chitty v. Railroad, 148 Mo. 64.    (4) The court erred in giving instruction 7 at the instance of plaintiff.  (a)  Said instruction is erroneous because it states that plaintiff had a right to presume that defendant would so operate its cars that there would be no collision. This precise point was passed upon in the case of Culbertson v. Railroad, 140 Mo. 61.  (b) It is further erroneous in that it bases a recovery on a find-

ing that plaintiff "was injured by the collision of the defendant's cars." This is erroneous because the plaintiff in his petition states that he was injured, not by the collision, but by the efforts of persons on the car to get off. And this is also what the proof shows. Plaintiff can not recover for a cause of action different from the one he has pleaded. Stone v. Hunt, 114 Mo. 66; State v. Hope, 102 Mo. 410; Evans v. Interstate Co., 106 Mo. 594; Woods v. Campbell, 110 Mo. 572. (5) The court erred in refusing to give instruction E offered by the defendant. This instruction correctly states the law, and should have been given. The plaintiff did not, in this case, plead generally, but limited himself to certain specifications of negligence. (6) The court erred in allowing plaintiff, over the objection of defendant, to testify in regard to his inability to sleep. Plaintiff pleaded specifically what injuries he had sustained and among them did not enumerate insomnia. (7) The court erred in allowing the plaintiff, over the objection of defendant, to state that his eyesight had been affected by the accident. In his petition plaintiff made no such allegation, although he alleged several other injuries.

*Thomas T. Fauntleroy* and *Theodoric F. McDearmon* for respondent.

(1) Upon the undisputed facts, proven by the evidence of the defendant, as well as by that of the plaintiff, defendant was grossly negligent in the operation of its cars, whereby a collision was caused. And in so managing its cars (according to all the evidence) defendant was negligent as charged in the petition. Malloy v. Railroad, 173 Mo. 75; Magoffin v. Railroad, 102 Mo. 540; Clark v. Railroad, 127 Mo. 197; Robinson v. Railroad, 77 S. W. 493; Railroad v. Arms, 91 U. S. 492; Hennessy v. Railroad, 173 Mo. 86. (2) In view of the admitted facts it would have been entirely correct to instruct the jury that the running of two cars towards each other on the same track so that they col-

lided (as shown by the evidence for defendant, and as admitted in this court by defendant's counsel in their brief for appellant), was negligence in the operation of defendant's railway, and it was wholly unnecessary to submit to the jury any issue as to such negligence of the defendant. The particulars of any instructions on that point are plainly immaterial, since the verdict for plaintiff on that issue is correct as a matter of law, and any error there might be in the instructions on that subject would be manifestly harmless. Moore v. Railroad, 176 Mo. 528; Becke v. Railroad, 102 Mo. 544. (3) It was proper to instruct the jury (as in the first instruction for plaintiff) that defendant was under obligation to its passengers to use the highest degree of care in the operation of its cars. Clark v. Railroad, 127 Mo. 197; Waller v. Railroad, 83 Mo. 608; Jackson v. Railroad, 118 Mo. 199. (4) There was no sufficient evidence tending to prove any contributory negligence of plaintiff. Goltz v. Griswold, 113 Mo. 144; Griffith v. Railroad, 98 Mo. 175. (5) The use of the words "by the collision" in the instruction (in referring to the injury to plaintiff) does not mean, and could not be understood by the jury to mean, that plaintiff sustained his injuries by the actual contact of the cars. The fair interpretation of these words is that his injury might be found to have been occasioned by the facts and circumstances attending the collision. Moreover, those words are used merely to identify the injury of plaintiff. That injury is the material fact the jury were to find. A call in an instruction for an immaterial fact in addition to the essential facts, is not error. Houx v. Batteen, 68 Mo. 84; State v. Ware, 69 Mo. 332; Wright v. McPike, 70 Mo. 175; Monson v. Rouse, 86 Mo. App. 97; Gaty v. Sack, 19 Mo. App. 477. (6) A reference (in an instruction) to the petition (in regard to the injuries of plaintiff) is not erroneous where there is no issue of law thereby submitted to the jury, and the reference to the pleading is plainly harmless, as in this instance. Brit-

ton v. City, 120 Mo. 437; State v. David, 131 Mo. 380; State v. Scott, 109 Mo. 226; Hartpence v. Rogers, 143 Mo. 623.    (7) The proof of a minor condition or symptom, arising directly from a shock (or other injury) to the nervous system, is admissible in evidence under the allegation of injury to the nervous system without a more minute and particular statement, following the maxim that "the greater includes the less."    Grady v. Railroad, 76 S. W. 673; Railroad v. Pina, 77 S. W, (Tex.) 979; Tyson v. Booth, 100 Mass. 258; Railroad v. Curry, 64 Tex. 258; Butts v. Bank, 99 Mo. App. 168. (8)    The instructions must be considered with reference to the facts of the case, and, if the result is correct on the conceded facts, any slight deviation from technical accuracy, which has not affected the judgment which the law would pronounce, should be discarded as harmless.    R. S. 1899, secs. 659, 865; Hartpence v. Rogers, 143 Mo. 623; Moore v. Railroad, 176 Mo. 528; Smiley v. Railroad, 160 Mo. 629; Berthold v. Const. Co., 165 Mo. 280; Chambers v. Chester, 172 Mo. 461.

VALLIANT, J.—The defendant owns and operates a system of street railroads in the city of St. Louis and the county of St. Louis.

On September 7, 1900, a collision occurred between two cars of defendant that were running on the same track, each in the opposite direction to the other. The plaintiff was a passenger on one of the cars and received personal injuries in the collision; that is, he was not on the car at the instant it came in actual collision with the other, but when the danger of a collision was imminent, there was a panic rush of the people on the car to escape, and the plaintiff standing on the front platform was pushed off by the mass of the escaping people and fell to the ground an instant before the cars struck each other. He sues for damages, alleging that the collision was caused by the negligence of the defendant.

The answer to the petition is a general denial, and a plea of contributory negligence.

This collision has been brought to the attention of this court in two other cases where passengers were injured in it (Malloy v. St. Louis & Suburban Ry. Co., 173 Mo. 75; Hennessy v. St. Louis & Suburban Ry. Co., Id. 86), and the evidence in the case at bar as to the collision, so far as its legal effect is concerned, is substantially the same as in those two cases.

That part of the defendant's railroad with which we are now concerned was a single track.    Just before reaching Romona Park from the west there is a curve in the road which prevents the motorman on a car going either way from having a long view of the track.    On this occasion the car on which plaintiff was a passenger had left Kinloch Park headed for St. Louis, and was approaching Romona Park.    The car was so crowded with passengers that plaintiff, with a number of other persons, was on the front platform.    It was 6:30 o'clock in the evening, about twilight.    As this car was going around the curve, the headlight of another car coming from the opposite direction was seen by the motorman at the distance of 150 or 170 feet.    There is a conflict in the evidence as to the speed at which the car in which the plaintiff was a passenger was going when the danger appeared.    Plaintiff's witness estimated it to have been twenty to thirty miles an hour; defendant's witness, twelve to fifteen.    The motorman immediately applied the brakes and reversed the power and by the time the collision occurred the speed was much reduced.    The other car was coming about six miles an hour and its motorman likewise applied the brakes and reduced the speed as much as possible.

As soon as the headlight was seen, a panic occurred in the car in which the plaintiff was, and a rush was made by the passengers to jump off; the motorman joined in the rush, and as the plaintiff was in the way he was pushed or carried off by the impetus and fell

to the ground. He testified that just as he struck the earth he heard the crash of the cars coming together. He received a serious hurt, the nature of which we will discuss hereinafter.

The case was given to the jury under instructions, some of which are complained of and will be presently considered. There was a verdict for the plaintiff for $7,500, and judgment accordingly, from which this appeal is taken.

I. The first instruction for plaintiff is as follows:

"1. The court instructs the jury, that, having received the plaintiff upon board of one of its cars as a passenger for the purpose of transportation along its line, the duty and obligation of the defendant railroad was to the plaintiff and its other passengers on that car, as far as it is capable by human care and foresight, to carry such passengers safely, and the defendant is responsible for all injury resulting to such passenger from any, even the slightest, neglect or negligence; and when the passenger suffers injury by a collision resulting from two cars being run in opposite directions on the same track, the presumption is that it was occasioned by some negligence of the defendant railroad, and the burden of proof is cast upon defendant to rebut this presumption of negligence, and establish the fact that there was no negligence on its part, and that the injury was occasioned by inevitable accident or by some cause which human precaution or foresight could not have avoided."

The defendant contends that this instruction is erroneous in several particulars. First, that it imposes on the carrier a higher degree of care than the law justifies. The language used in this instruction declaring it was the duty of the defendant, "as far as it is capable of human care and foresight, to carry such passengers safely, and the defendant is responsible for all injury resulting to such passengers from any, even the slightest, neglect or negligence," is copied from the

opinion of the court in Clark v. Railroad, 127 Mo. 197. The court, however, in using that language was not discussing an instruction containing those words and was not prescribing the form of an instruction. It is not always safe to take an excerpt from an opinion and embody it in an instruction, because the opinion is addressed to lawyers, while the instruction is addressed to laymen. The care which a carrier owes to its passengers is of a very high degree. In attempting to give it definition a variety of forms of expression have been used, as the learned judge who wrote the opinion in that case mentioned, and after giving some of them, he said: "The various formulas amount to the same thing in principle." It is a very high degree of care, but not the utmost care that human imagination can conceive. It is the highest degree of care that can reasonably be expected of prudent, skillful and experienced men engaged in that kind of business. The term "as far as is capable by human care and foresight" in this connection is liable to be misconstrued by a jury as meaning care to the utmost limit imaginable, that is, care without limit, whereas the highest degree of care practicable among prudent and skillful men in that business is all that can reasonably be expected of any men and it is all that the law demands.

The term "even the slighest neglect or negligence" should also be avoided in an instruction. There are no degrees of negligence; there are degrees of care, and a failure to exercise the proper degree of care is negligence. The jury should not be puzzled with degrees of negligence.

But whilst the language of this instruction is amenable to the criticism that is given it by appellant, it is of no injurious effect in this case, because under the undisputed facts the defendant was prima facie guilty of negligence, and there was no evidence tending to overcome it. The running of two cars on the same track in opposite directions is prima facie evi-

dence of negligence. Judge Thompson, in his late work on Negligence, on this subject says: "It is, of course, possible, in exceptional cases, for the carrier to exonerate himself by showing that the collision took place through some circumstance beyond his control, notwithstanding the fact that he exercised the high degree of vigilance which the law imposes upon common carriers of passengers—as, for example, where it was produced by the *sudden conduct of a trespasser in misplacing a switch*—conduct which could not have been prevented or detected by the exercise of the extraordinary vigilance which the law imposes upon the carrier." [3 Thompson on Negligence, sec. 2824.] There was no attempt by the defendant to show that this collision occurred by some act beyond its control or beyond its power to avoid by the exercise of the care the law imposed on it.

Appellant next contends that the instruction was erroneous in that it is based on the theory that the plaintiff was injured by the collision of the cars, whereas he was thrown off the car before the collision occurred.

The rush of the panic-stricken passengers which threw the plaintiff off the car was the result of the impending collision and was in legal contemplation as much the effect of the collision as consequences which followed it.

It is also contended that the instruction is erroneous in that it charges the defendant with negligence in allowing the collision, whereas the plaintiff in his petition predicates his case on the alleged negligence of the servant of the defendant in running the car at a dangerous rate of speed and in not looking ahead along the track. The petition does allege that the servants in charge of the car ran it at a dangerous rate of speed and without looking ahead, but after that it also alleges that the defendant negligently ran a car in the opposite direction on the same track on which the car in which

plaintiff was travelling was moving and thereby caused the collision. The negligence in that particular is sufficiently stated in the petition.

The last complaint of the instruction is that it ignores the question of contributory negligence on the part of the plaintiff.

There was no evidence that the plaintiff was guilty of any negligence. The fact that he was standing on the front platform was rendered necessary by the crowded condition of the car. That position imposed on him the duty of exercising the increased care that its increased danger entailed and it imposed on the defendant a corresponding duty to handle the car with increased care in view of his exposed position. But there was nothing in the evidence to show that the plaintiff did not exercise all the care that the situation required.

There is nothing to the prejudice of the defendant in that instruction.

II. The second instruction complained of is as follows:

"2. If you believe and find from the evidence in this case that the plaintiff acted in this matter as an ordinarily prudent person would have done, under similar circumstances and surroundings to that which surrounded the plaintiff in this case, when the accident occurred, and that he was injured in the manner as claimed by him in his petition, in this case, the defendant can not escape liability to him for such injuries, unless the defendant has proven to you by a preponderance of the evidence that the accident happened from causes beyond its control, and to which neither its own negligence, nor that of its employees in any way contributed."

That instruction was doubtless designed to carry the idea that if the plaintiff acted as an ordinarily prudent man would have done under the circumstances, yet

was injured in consequence of the collision as described
in the evidence, the defendant was liable, unless it
showed by a preponderance of the evidence that the col-
lision occurred from causes beyond its control—that the
collision, the injury to the passenger without fault on
his part, threw the burden on the defendant to show
that the collision resulted from causes beyond its con-
trol. That is a correct idea of the law, but the instruc-
tion is conveyed in language that justifies the criticism
appellant makes, that is, it refers the jury to the petition
to learn what the issue is, instead of stating it in the
instructions. It is especially wrong in this case be-
cause, as we have already seen, the petition does not
count on the collision alone, but contains an allegation
of negligence independent of the collision, and the jury,
if sent to the petition to learn the issues, would not
know which of the two acts of negligence to select.

But the error in that instruction could not have
affected the merits of this case, because on the evidence
of both the plaintiff and the defendant the defendant
was liable.

III. Instruction 6 and 7 are also complained of.
They are as follows:

"6. The court instructs the jury, if you shall find
from the evidence in this case that the defendant rail-
road received or allowed such a number of passengers to
get upon its car, as to cause not only the car itself, but the
rear and front platform of said car, to be crowded with
passengers, and so as to render it likely that such pas-
sengers on its said platforms would be hurt, in case their
cars collided with any objects on the tracks of defend-
ant, that, then and in such case, the defendant owed an
increased and greater duty to such passengers on its
said platforms than it ordinarily would if such danger
did not exist, and under such circumstances, if you find
from the evidence that such was the condition of said
car, and its front and rear platforms, the court instructs.

you that it was the duty of the defendant to so run and operate its cars as to prevent plaintiff and those who were with him on the front platform of such car from being injured by any collision which might result from or be produced by the negligence or carelessness of the defendant, or of its agents and servants who might then and there be in charge of its said car or cars.

"7. The plaintiff had the right to presume and rely upon the fact, when he became a passenger on the cars of said defendant, that it would not be guilty of any negligence, or negligently run or allow any of its cars to be run at the same time on the same track, and in opposite directions, so as to cause a collision therefrom, and if you find from the evidence in this case that the plaintiff, in what he did on the occasion in question, acted as an ordinarily prudent person would have acted under the circumstances, in riding upon the front platform of the defendant's car, and that in what he did he acted as an ordinarily prudent person would have acted and was injured by the collision of the defendant's car, that then, and in that case, your verdict should be for the plaintiff and against the defendant."

The only adverse criticism to be passed on those instructions is that they submit to the jury the question of negligence of the defendant in the matter without instructing the jury as to what constitutes negligence. Where, as in this case, there is no instruction defining negligence, the question submitted to the jury should be, not whether the act was done negligently, but whether in doing it the defendant observed the degree of care required, and that degree should be stated in the instruction. If, however, the term negligence is defined in any of the instructions, the question of whether the defendant did the act complained of negligently may be put in that form to the jury.

But for the same reason above given in regard to the other instructions the errors in them do not affect the merits of the case.

IV. Appellant complains of the refusal of this instruction:

"E. The court instructs the jury that the mere fact of the collision in question raises no presumption of negligence on the part of the defendant."

What we have above said in discussing the first instruction for the plaintiff shows our view of this instruction. It was not error to refuse it.

V. In his fall from the car the plaintiff suffered an injury to his left knee. When the surgeon reached him that evening at the hotel in the city to which he had been carried, he found him suffering great pain, the knee joint was swollen, discolored and indicated that it was bruised on the inside, that there had been a hemorrhage under the knee joint. The surgeon caused the limb to be put in ice bandages for several days until the swelling was reduced and then put it in a plaster cast. He was compelled to use plaster casts until the last of November (the accident occurred September 7th), during which time he was able to go about on crutches. He suffered a great deal of pain in the limb and in his head—had never had headaches before and his health had been perfect. Since the accident he is nervous if he sees anything that indicates possibility of an accident; if he sees a car which he fears will run over a child he is nervous.

At the date of the trial, which was about a year after the accident, the plaintiff had not recovered the full use of his knee, he could not walk as freely as formerly, had to use a cane and step with caution, and in changes of the weather suffered pain. A surgeon who examined him a few days before the trial was of the opinion that there was a blood clot which impaired the use of the knee and hindered recovery. The clot might be naturally absorbed in the course of time, but that would be slow and doubtful; it might be relieved by an

operation but he would not advise it. Plaintiff had incurred about $1,000 expense for surgical attention, etc.

The jury awarded the plaintiff damages to the amount of $7,500.

The foregoing is a brief summary of that part of the evidence relating to the plaintiff's injuries, the legality of which is not questioned, but there was other evidence admitted over the objection of the defendant which appellant does question.

The plaintiff's injuries are thus stated in the petition: "His left knee cap was then and there seriously and permanently maimed, bruised and injured, and plaintiff was thereby otherwise seriously maimed, bruised and injured about his body and limbs and his nervous system thereby likewise seriously and permanently injured and impaired."

Those were the injuries to which the defendant was called to respond, and these were the only injuries to which his testimony in chief related. But after the plaintiff had been cross-examined in reference to the occurrence of the accident he was re-examined in chief by his counsel: "What has been your condition in regard to sleeplessness, or your ability to sleep since the accident?" "I have been a very nervous man since the accident." "Mr. Magrane, I will ask you what has been your condition with regard to your ability to sleep since the accident?" "I do not sleep well since the accident; I am nervous; my head caused me a great deal of trouble for three or four weeks after the accident; I am very nervous and I do not have the same rest at night since that accident that I had previous to that." "I will ask you what your ability to sleep has been since the accident—do you sleep as much?" "I don't sleep through the night like I did previous; I wake up with starts and jerks." "Up to the time of the accident what was your condition with regard to sleeping sound?" "Sleeping like a log—I slept sound."

"What, if any, change have you noticed about your eyesight?" "My eyesight has not been as good since the accident." "What was the condition of your eyesight previous to the accident and up to the time of it?" "I read at night and I had good eyesight; I could see small print and I could see as good as I could ten years ago; since the accident my eyes have not been good; I don't see well; my eyes are very weak; I don't see; I can't see the print at night; I don't read at all." To all this testimony timely objections, on the ground that it related to injuries other than those specified in the petition and which defendant had no opportunity to prepare to meet, were made but were overruled and exceptions taken. It was followed by the testimony of one of the surgeons who was a witness for the plaintiff, to which there were like objections and ruling and exceptions: "You heard his statement with regard to his sleeplessness since the injury and his diminished eyesight. State whether or not in your opinion such an injury as he received on this occasion would cause diminished eyesight, such as he has testified to, and impairment of his ability to sleep?" "Injuries to his nervous system will produce a series of subjective symptoms which are in line with your question; that is, insomnia and nervous tremor and in the sight, and produce an effect in the optic nerve; they are subjective." "What do you mean by subjective?" "A symptom the patient complains of and tells you of; I never examined his eyes." The witness then went on to say that when the optic nerve becomes affected and the sight diminished the injury is usually progressive.

The effect of letting that evidence go to the jury was to authorize them to add to the damages they might award the plaintiff for injury to his knee and his suffering therefrom, compensation for the disease of insomnia and impairment of his eyesight, which were liable to increase in injurious effect. The plaintiff was not entitled to that. In his petition he specified the in-

juries he had received, but insomnia and impairment of eyesight was not among them. There was a general charge of injury to his nervous system, but no suggestion that it had culminated in any particular disease. And there was really no legitimate evidence to connect those conditions with the injury to the knee. The plaintiff testified that after the accident he had not slept so well as before. But the evidence shows that he was engaged in a business which common experience teaches sometimes involves great hazards of fortune and entails intense excitement. His business may have had something to do with his restlessness at night. When the testimony in regard to his eyesight was offered, the court, before ruling on the objection, asked the counsel for plaintiff if he would trace it back to the accident and the counsel answered that he expected to do so and with that assurance the evidence was received. But the nearest the plaintiff came to realizing that expectation was in the testimony of the surgeon above quoted in which he said that injuries to the nervous system will produce subjective symptoms of that kind. He then explained that subjective symptoms were symptoms for which the surgeon had to rely on what the patient said about it. This witness seemed cautious not to say in answer to the hypothetical question that under the circumstances of this case he attributed the insomnia and diminution of eyesight to the injury to the knee. This surgeon had attended the plaintiff when his injury was fresh and had also examined him a few days before the trial doubtless with a view to testifying, yet he did not say that his nervous system was injured, or that insomnia and diminution of sight resulted from the injury to the knee. But even if there had been testimony to that effect, otherwise legitimate, it should not have been received over the objection of the defendant because it tended to prove· serious injurious consequences of the accident beyond those specified in the petition and which the defendant had no opportunity to

answer with evidence to the contrary. The receiving of this evidence in reference to insomnia and diminution of eyesight is the only error affecting the merits of the case that we find in the record, but that we consider serious, and for that reason the judgment is reversed and the cause remanded to be tried again in the light of the law as herein expressed.

All concur, except *Robinson, J.*, absent.

PER CURIAM: This cause coming on to be again considered by the court on the respondent's motion for a rehearing and leave to amend petition, it is the judgment of the court that the opinion heretofore delivered herein be so far modified that paragraph V thereof be withdrawn, and that the judgment of that date that the judgment of the circuit court be reversed and the cause remanded for retrial be set aside, and in lieu thereof the judgment be that if the plaintiff sees fit to remit $2,500 of his judgment within ten days the judgment will be affirmed; otherwise, that the cause will be remanded to be retried.