BY THE

## ST. LOUIS AND THE KANSAS CITY

# COURTS OF APPEALS

AT THE

OCTOBER TERM, 1905.

---

JOHN CASEY, Respondent, v. WROUGHT IRON BRIDGE COMPANY, Appellant.

**Kansas City Court of Appeals, October 2, 1905.**

1. **PRACTICE, TRIAL: Conflict: Jury.** Conflicts over matters of fact are to be determined by triers of fact.

2. **NEGLIGENCE: Contractor: Owner: Stranger.** Where the contractor remains in control of the work, even after completion, he alone and not the owner is liable for injuries sustained by others in consequence of his negligence even though they are strangers to the contract, since, aside from the duties imposed by the contract, every man owes it to his fellows to refrain from inflicting personal injury by acts of negligence, and the contract cannot absolve him from the duty.

3. ———: ———: **Nuisance: Bridge: Oklahoma Statute.** Oklahoma statutes relating to nuisance are but legislative recognition of settled principles, and a bridge erected in a public highway according to law is not a nuisance so as to give a common law right of action.

4. ———: **Nuisance: Action.** Negligence is not an essential element in a cause of action arising out of nuisance, which latter of itself constitutes an unlawful annoyance and its author is liable, regardless of his care.

5. ———: ———: ———: **Bridge: Contractor.** In order to make a bridge authorized by law on a public highway a nuisance, it must in its entirety be a dangerous obstruction, regardless of what made it such; and a contractor cannot be held liable unless his acts made it such nuisance.

6. ———: ———: ———: **Pleading.** Two counts in a petition are considered and the averments relating to the nuisance in one regarded as surplusage, since the gravamen of each count is negligence, which may be stated in separate counts to meet the phases of proof.

(47)

7. ———: **Bridge Contractor: Acceptance: Strangers.** As a general rule the contractor after the acceptance of a bridge is not liable to third parties for damages sustained by reason of his negligence, since the intervening negligence of the owner is the proximate cause.

8. ———: ———: ———: ———: **Exception.** But where the negligence, though gross, is concealed so as to escape reasonably careful inspection of the owner in the acceptance, the rule does not apply, and the liability of the contractor remains the same as before acceptance.

9. —: **Damages: Instructions: Evidence.** Submitting negligence to a jury without pointing out the facts constituting it, is submitting a question of law and reversible error; and the evidence does not warrant the contention that negligence was admitted.

Appeal from Jackson Circuit Court.—*Hon. Andrew F. Evans,* Judge.

REVERSED AND REMANDED.

*Haff & Michaels* and *L. W. McCandless* for appellant.

(1) The bridge here in controversy was not a public nuisance: the builder of the bridge, therefore, cannot be charged in an action for nuisance with any liability to respond in damages for the injuries inflicted upon respondents by the collapse of the bridge. Tate v. Railroad, 64 Mo. 149, 155; 7 Am. & Eng. Ency. of Law (2 Ed.), 950; Smiths v. McConathy, 11 Mo. 517, 522; Kirchgraber v. Lloyd, 59 Mo. App. 59, 62; Cooley on Torts (2 Ed.), 670-671; Paddock v. Somes, 102 Mo. 226, 227; Transportation Co. v. Chicago, 99 U. S. (9 Otto) 635, 25 L. C. P. 336; Payne v. Railroad, 112 Mo. 6; Whitfield v. Carrollton, 50 Mo. App. 98; Thompson on Negligence, p. 1064, sec. 1188; Dickinson v. New York, 28 Hun 254, 256, 92 N. Y. 588; Campion v. Rollwagen, 43 App. Div. (N. Y.) 117; Babbage v. Powers, 130 N. Y. 281; Abbott v. Railroad, 83 Mo. 271; Benjamin v. Railroad, 133 Mo. 274, 283, 284; Matthews v. DeGroff, 13

App. Div. (N. Y.) 356; Anderson v. Caulfield, 60 App.
Div. (N. Y.) 560; Stoetzele v. Swearingen, 90 Mo. App.
588; 21 Am. & Eng. Ency. of Law (2 Ed.), 701; 21 Am.
& Eng. Ency. of Law (2 Ed.), 444; 4 Am. & Eng. Ency.
of Law (2 Ed.) 927; Bielman v. Railroad, 50 Mo.
App. 151, 154-155; Hastings on Torts, p. 225; Pach
v. Geoffroy, 67 Hun 401, 143 N. Y. 661; Lamming v.
Galusha, 135 N. Y. 239. (2) Respondents were nei-
ther parties nor privies to the contract whereunder the
bridge here in controversy was erected; the builders of
the bridge therefore owed no duty to respondents to
build the bridge with care, or in accordance with the
specifications of the contract providing for the erection
of the bridge; for this reason, the builder of the bridge
cannot be charged in an action for negligence with any
liability to respond in damages for the injuries inflicted
upon respondents by the collapse of the bridge. Roddy
v. Railroad, 104 Mo. 234; Schade v. Gehner, 133 Mo.
252; Bank v. Ward, 100 U. S. 195, 25 L. C. P. 621;
Zweigardt v. Birdseye, 57 Mo. App. 462; Mann v. Rail-
road, 86 Mo. 347; Gordon v. Livingston, 12 Mo. App.
267; Heizer v. Mfg. Co., 110 Mo. 605; Heaven v. Pen-
der, L. R. 9 Q. B. Div. 302; (1883) L. R. 11 Q. B. Div.
503; Holland's Elements of Jurisprudence (9 Ed. 1900),
p. 109; Bragdon v. Perkins-Campbell Co., 87 Fed. (3
C. C. A.) 109; Pollock on Torts (2 Ed.), p. 375, note
E; Marquardt v. Engine Co., 122 Fed. (6 C. C. A.) 374;
Winterbottom v. Wright, 10 M. & W. 109; Longmeid v.
Holliday, 6 Exch. 761; Collis v. Selden, L. R. 3 C. P.
Cos. 495; Railroad v. Mulholland, App. Cas. 216; Cur-
tin v. Somerset, 140 Pa. St. 70; Necker v. Harvey, 49
Mich. 517; Daugherty v. Herzog, 145 Ind. 255; Sawyer
v. Railroad, 38 Minn. 103; Burdick v. Cheadle, 26 Ohio
St. 393; Burke v. De Castro, 11 Hun 354; Davidson v.
Nichols, 93 Mass. (11 Allen) 514; Kahl v. Love, 37 N.
J. L. 5; Safe Co. v. Ward, 46 N. J. L. (17 Vroom) 19;
Williams v. Stillwell, 88 Ala. 333. (3) The bridge here

in controversy was, when completed, accepted and approved by the board of county commissioners of Kingfisher county, and the bridge builder then relinquished to the county commissioners the possession and control of the bridge; respondents therefore cannot evade the general principle that no one not a party or privy to a contract can recover for a negligent violation thereof, and so cannot maintain an action for negligence, on any theory that the bridge here in question had not, at the time of its collapse, been accepted by the county commissioners. Wharton on Negligence (2 Ed.), chap. 1, Book 2, pp. 364-370; Boswell v. Laird, 8 Cal. 469; Losee v. Clute, 51 N. Y. 494; Read v. Fire District, 20 R. I. 574; Cross v. Koster, 17 App. Div. (N. Y.) 402; Smith v. Railroad, 201 Pa. St. 131; Fitzmaurice v. Fabian, 147 Pa. St. 199; Albany v. Cunliff, 2 N. Y. 165; Congregation v. Smith, 163 Pa. St. 561; Salliotte v. Bridge Co., 122 Fed. (6 C. C. A.) 378; Elliott on Roads and Streets (1890), pp. 21-23; Boggs v. Caldwell County, 28 Mo. 586; Dillon's Municipal Corp. (4 Ed.), secs. 300, 301; O'Malley v. Lexington, 99 Mo. App. 695; Walker v. Point Pleasant, 49 Mo. App. 244; New York v. Sheffield, 71 U. S. 189, 18 L. C. P. 416; Schenck v. Butler, 50 Mo. App. 108; Maus v. Springfield, 101 Mo. 613; Hill v. Sedalia, 64 Mo. App. 494; Baldwin v. Springfield, 141 Mo. 205; Downend v. Kansas City, 156 Mo. 60; Johnson v. St. Joseph, 96 Mo. App. 663. (4) The bridge here in controversy was not an "imminently dangerous" structure, and was not known to the bridge builder to be dangerous in any degree; respondents therefore cannot evade the general principle that no one not a party or privy to a contract can recover for a negligent violation thereof, and so cannot maintain an action for negligence, on any theory that the bridge was dangerous. Roddy v. Railroad, 104 Mo. 234; Heizer v. Mfg. Co., 110 Mo. 605; McCaffrey v. Mfg. Co., 23 R. I. 381; Thomas v. Winchester, 6 N. Y. 397; Loop v. Litchfield, 42 N. Y. 351; Losee v. Clute, 51 N. Y. 494; Burke v. De Castro,

11 Hun 354; Wright v. Canal Co., 40 Hun 343; Swan v. Jackson, 55 Hun 194; Knelling v. Mfg. Co., 88 App. Div. 309; Vosburg v. Railroad, 94 N. Y. 374; Rice v. Smith, 171 Mo. 331; Bragdon v. Perkins-Campbell Co., 87 Fed. (3 C. C. A.) 109; Mill Co. v. Oil Co., 63 Fed. (7 C. C. A.) 400; Railroad v. Ballentine, 84 Fed. (7 C. C. A.) 935; Oil Co. v. Murray, 119 Fed. (7 C. C. A.) 572; Marquardt v. Engine Co., 122 Fed. (6 C. C. A.) 374; Bailey v. Gas Co., 4 Ohio Cir. Ct. Rep. 471; Zieman v. Mfg. Co., 90 Wis. 497; Talley v. Beever & Hindes, 78 S. W. (Tex. Civ. App.) 23; Curtin v. Somerset, 140 Pa. St. 70; Glynn v. Railroad, 175 Mass. 510; Davidson v. Nichols, 93 Mass. (11 Allen) 514; Norton v. Sewall, 106 Mass. 143; Peters v. Jackson Co., 50 W. Va. 644; Davis v. Guarnineri, 45 Ohio St. 470; Balm Co. v. Cooper, 83 Ga. 457; Bishop v. Webber, 139 Mass. 411; Langridge v. Levy, 2 M. & W. 519, 4 M. & W. 337; Lewis v. Terry, 111 Cal. 39; Woodward v. Miller, 119 Ga. 618; Slattery v. Colgate, 25 R. I. 220, 55 Atl. 639. (5) The giving of respondent's instruction which submitted to the jury the question of negligence or no negligence, without defining the term, was reversible error. Magrane v. Railroad, 81 S. W. (Mo. Sup.) 1158; Gessley v. Railroad, 26 Mo. App. 156; Goodwin v. Railroad, 75 Mo. 73; Yarnall v. Railroad, 75 Mo. 575; Ravenscroft v. Railroad, 27 Mo. App. 617; Gurley v. Railroad, 83 Mo. 445; Senate v. Railroad, 41 Mo. App. 295. (6) The verdict for each respondent was a general verdict covering two separate and distinct causes of action, and was therefore bad. Owens v. Railroad, 58 Mo. 386; Sturgeon v. Railroad, 83 Mo. 391; Speer v. Burlingame, 61 Mo. App. 75; Pomeroy's Remedies & Remedial Rights (2 Ed.), sec. 453, 455, 456, 519; Holland's Elements of Jurisprudence (9 Ed.), pp. 142-163; Maltbie v. Bolting, 6 N. Y. Misc. 339; Lamming v. Galusha, 63 Hun 32; s. c., 135 N. Y. 239; Martin v. Petitt, 117 N. Y. 118; Brunsden v. Humphrey, 14 Q. B. Div. 141; Welsh v. Stewart, 31 Mo. App. 376.

*J. C. Tarsney* and *C. F. Mead* for respondents.

(1) If the appellant carelessly and negligently constructed the bridge in question and the plaintiff was injured by reason of such careless and negligent construction, and the bridge had not been accepted by the commissioners at the time of the injury, then the appellant was liable for such injuries whether it knew of such careless and negligent construction or not. Appellant was liable as the independent contractor in charge of the work. 1 Thompson's Com. on Neg., 685; Imp. Co. v. Rhoads, 116 Pa. St. 377, 382; Bast v. Leonard, 15 Minn. 305. (2) The bridge had not been accepted by the county at the time of the injury. It required a formal action in regular meeting on the part of the commissioners to constitute such an acceptance. O. K. Statutes; 1797, App. Abst. 30; Medlin v. Platte Co., 8 Mo. 235; Milan v. Pemberton, 12 Mo. 598; Dennison v. St. Louis, 33 Mo. 168; Maupin v. Franklin Co., 67 Mo. 327-329; Riley v. Pettis Co., 97 Mo. 321; Reppy v. County, 47 Mo. 66; Johnson v. School Dist., 67 Mo. 319; Taylor v. Wayne, 25 Iowa 451; Kane v. School Dist., 48 Mo. App. 408; State ex rel. v. Sackett, 54 Mo. App. 202; State ex rel. v. Uray, 55 Mo. App. 653; State v. Lawrence, 77 S. W. 497; Murphy v. Albina, 22 Oregon 106; Railroad v. Comrs., 16 Kan. 310; State ex rel. v. Comrs., 36 Kans. 240; Williams v. Comrs., 28 Mont. 362, 72 Pac. 755; Phelan v. San Francisco, 6 Cal. 532-540; Taft v. Montague, 14 Mass. 282; Read v. Statuate, 87 Mass. 120; Pratt v. Swanton, 15 Vt. 147; Downend v. Kansas City, 156 Mo. 60-70. (3) If the appellant knowingly constructed the bridge in a manner which rendered it dangerous to those who might use it then it is liable in this case whether the bridge was or was not accepted by the county commissioners. Huser v. Mfg. Co., 110 Mo. 605, l. c. 617; Lewis v. Terry, 111 Cal. 39; Woodward v. Miller, 119 Ga. 618; Slattery v. Colgate, 25 R. I. 220; Schubert v. Clark, 49 Minn. 331; Huset

v. Machine Co., 120 Fed. 865. (4) The bridge as constructed was a nuisance under the Oklahoma statute and under such statute anyone injured by such nuisance has an action therefor. Oklahoma Statute, par. 3433, 3434-3442 (see appellant's abstract, p. 30). (5) There was no prejudicial error in the giving in the instruction asked for by plaintiffs in which negligence was not defined for the reason that upon the appellant's evidence the plaintiffs were entitled to an instruction that the bridge was negligently constructed. Fullerton v. Fordyce, 121 Mo. 7; Fullerton v. Fordyce, 144 Mo. 528. (6) The respective second counts not duplications. Hill v. Railroad, 49 Mo. App. 520, 534, 120 Mo. 477.

JOHNSON, J.—Plaintiff while travelling upon a public highway in Kingfisher county, Oklahoma, was injured by the collapse of a bridge over which he and his companions were driving at the time. This action is to recover damages for injuries sustained. The defendants are alleged to be contractors who built the bridge, under contract with the board of county commissioners of Kingfisher county. During progress of the trial plaintiff suffered a compulsory nonsuit as to the defendant Hoover. This appeal is prosecuted by the remaining defendant, The Wrought Iron Bridge Co., against which the plaintiff recovered judgment in the sum of four thousand dollars.

The petition is in two counts. In the first, after pleading certain sections of the Oklahoma statutes, prescribing the powers of the county commissioners, and certain other sections defining nuisance, plaintiff charges in substance, that defendant constructed the bridge in question under contract with the commissioners; that when completed it was opened, by defendant, for public use shortly before the accident, but had not been accepted or approved by the commissioners; that in the contract and specifications, attached thereto, the bridge was to be in eight spans, one of eighty and seven

of twenty feet in length, the larger span to be supported by four tubular piers, thirty-two feet high and thirty inches in diameter, resting upon solid concrete foundations, and filled with concrete of designated composition. Then follow specific charges of negligence, "That defendants. . . negligently and carelessly filled said tubes with dirt, sand, twigs and leaves, with insufficient quantities and poor quality of cement and rock, and neglected to mix, blend and tamp said materials, so that they did not constitute a solid body, but were weak, loose and brittle. . . Negligently and carelessly planted said tubes upon foundations of like material filling the tubes, rendering said foundations weak, soft, spongy, and unfit to support said bridge . . . on account thereof said bridge was unable to support the lightest travel, and was utterly unfit for use. . . By reason of the real conditions described, and the negligence of the defendants aforesaid, said structure at the time of its erection was, and thereafter continued to be a public nuisance." The fall of the bridge, while plaintiff was crossing, was alleged to be the fault of the negligent construction described.

The facts alleged in the second count are in substance the same as those in the first, with the exception that the allegations of the first relating to the charge that the bridge was a public nuisance are omitted, and additional averments are made that "said structure at the time of its erection was, and thereafter continued to be imminently dangerous to all persons attempting to cross, and use the same. All of said conditions were known to defendant, or could have been known, by the exercise of ordinary care in time to remedy said defects and prevent said injury."

Defendant unsuccessfully demurred to both counts, on the ground that neither stated a cause of action, and at the conclusion of the evidence filed a motion that plaintiff be required to elect upon which count he would stand, and upon the overruling of this motion asked a

peremptory instruction directing a verdict for defendant. The questions of pleading involved will be considered with those presented by the action of the court in refusing to give a demurrer to the evidence.

Defendant in its answer, among other defenses including a general denial, pleaded an acceptance of the bridge by the county commissioners before the injury. The affirmative defenses were put in issue in the reply filed by plaintiff.

Among the facts in evidence about which there is no dispute are these: The board of county commissioners was the lawfully constituted agent of the county, in charge and control of works of public improvement, and as such was authorized by law to build the bridge; its proceedings leading to the making of the contract were regular and lawful; it decided to let the contract for the building of the structure with the exception of the dirt approaches, which were to be built by the township in which the bridge was situated. General dimensions were furnished bidders. The Wrought Iron Bridge Co. was at the time engaged in the business of manufacturing and constructing bridges, with its place of business at Canton, Ohio. J. W. Hoover, with headquarters at Kansas City, was its agent for Oklahoma. He caused a design for a bridge, together with plans and specifications, conforming to the dimensions furnished, to be prepared at Canton, and submitted them, together with a bid to the board of commissioners. These were approved and accepted, and a contract was made between the Board and Hoover, who at the time was acting for the defendant bridge company, and took the contract in his own name, for convenience only. The contractor was required "To furnish all metal work . . . and all other materials, and to construct and complete ready for travel, a bridge . . . to be built in accordance with the specifications" for which the contractor was to receive, when the work was completed and accepted, the sum of one thousand, eight hundred dollars.

The superstructure of the main central span was to be of wrought iron, supported at each end of its four corners by a metal tube about thirty feet in length and about thirty inches in diameter, to be filled with concrete, the idea being to support the superstructure upon four monolithic columns, encased by metal sheeting. These columns in turn were to rest upon solid concrete foundations of sufficient depth to secure stable and unyielding support. The remaining seven spans were to be constructed of wood and supported upon wooden spiles driven into the ground. So far as external appearances indicated, the bridge was built in substantial conformity to the requirements of the contract. Shortly after beginning work the Board decided to lengthen the bridge by adding three additional bents or spans, each sixteen feet long. A supplemental contract was made, between the Board and the contractor, for the work. The additional spans, when completed, complied with the terms of the new agreement, which required them to be of similar construction to that of the seven wooden spans. Upon the completion of the bridge, the contractor's foreman in charge of the work requested an inspection thereof by the Commissioners. The three members of the Board personally examined the structure, and the foreman withdrew his force and left the work as completed.

In the condition it then was the bridge could not be used as a part of the highway, for the reason that at either end there was a gap of some fifteeen feet between it and the bank. These were afterwards closed under the direction of the township officials, for the purpose of making it passable. Both banks were precipitous, and were from eight to twelve feet high. Planks were nailed to the spiles at both ends of the bridge to form barricades to hold the filling. Earth and other substances were dumped in until a level roadway was made from the banks to the bridge. When these connections were completed the bridge was left open and the public began using it, and continued such use to the time of its fall, a

period of some four or five weeks. The use to which the bridge was subjected during that time was but ordinary. There was no extraordinary or unusual strain imposed upon it from any cause, aside from those resulting from its own weakness. At the time of the collapse there was but one vehicle on the structure, the wagon in which plaintiff and his several companions were riding. A pair of mules was drawing the wagon. The facts in controversy are grouped around the respective theories accounting for the fall, and, as might be expected, the theory of each party, assuming as it does the verity of the evidence offered by his witnesses, and discrediting that introduced by his opponent, is reconcilable to the evidence left by the wreckage of the superstructure and tubular piers. It therefore will serve no useful purpose to go into these facts.

It appears to be conceded that had the bridge been built properly, according to the specifications, it would have been sufficient for the purpose intended, though not of the best design for a structure of its dimensions and weight. It is plaintiff's contention that the bridge fell because of the negligent and improper construction of the concrete used in the foundations and piers, while defendant asserts that the concrete was properly made and laid, and was sufficient in all respects, and that the central span fell because it was subjected to an unnecessary strain resulting from the negligent manner in which the township prepared the approaches; that the piling should not have been used to support the barricades to hold the filling in place, and that the strain thus imposed upon them was communicated along the structure, resulting in the meeting of the opposing forces at the center span, causing it to "buckle," thus throwing it out of alignment and producing its fall.

The evidence introduced by the plaintiff abundantly supports his contention, and if given credence established negligence, in the construction of the concrete, so gross as to lead to but one conclusion. The builder

must have known that the bridge could not stand upon a support so insecure. Relative to the foundations it is shown that some of them did not rest upon solid footing, but upon mucky, yielding soil. When the excavations were made they filled with water, carrying in solution silt in sufficient quantities to prevent the hardening of concrete, if properly prepared. Instead of drawing out this muddy water, stone, sand and cement, without being mixed, were thrown into the excavation. Mingled with these ingredients were foreign substances, such as dirt, twigs and leaves. As a natural result the mixture failed to set and harden, and instead of becoming, as it should, a solid entity approaching stone in hardness and supporting strength, it remained a soft and weak conglomeration of its constituent parts. The piers were filled in the same manner, and instead of becoming solid columns of stone as intended, their only supporting strength lay in the metal cases less than an inch thick, filled with loose material that served no other purpose than to increase the burden upon the foundations. It is shown that a proper construction required the thorough mixing of the stone, sand, cement and water before the placing of the concrete, and that it should have been kept free of dirt and like substances. An examination of the foundations made after the accident, disclosed that two of them were so soft that an iron rod could be pushed through them into the soil underneath, with one hand, and that the concrete in the fallen piers was practically devoid of cohesion.

These facts are all denied by the defendant's witnesses, with one exception. The foreman admits that he did not mix the ingredients before placing them in the excavations and piers, but denies that the water in the foundations carried enough silt to affect the hardening of the concrete, or that any foreign matter was mingled with the proper materials. He claims that the underlying soil was of unusual firmness. Defendant's witnesses who testify upon the subject all say that the concrete

was in fact free from defects, and that the method followed in its preparation was a usual and proper one and goes by the name of grouting. Such conflicts over matters of fact are issues for the determination of the triers of fact. They have been resolved, by the verdict, in favor of plaintiff. We observe nothing in plaintiff's contention incompatible with reasonable probability or physical law. Therefore in deciding whether or not plaintiff is entitled to a submission of the case to the jury, we are to assume as proven the facts most favorable to him, and to draw therefrom every reasonable inference that may be indulged in support of his position. Assuming then that the bridge fell as a result of the defendant's negligence from defects of a character to imperil its safety and to make of it a dangerous structure certain to fall without the aid of intervening causes; that defendant knew of the defects and must have known of the result sure to follow; that the defects were hidden and not discoverable upon reasonable inspection, and that defendant knew of the use to be made of the bridge by strangers to the contract; what is the liability, if any, of the defendant who was concededly an independent contractor, having contractural relations with the county alone, and being in no sort of privity with the public who might use the bridge.

During the time that an independent contractor is permitted by the owner to remain in control of the construction work or of the structure after completion and before acceptance, he alone and not the owner is liable for injuries sustained by others in consequence of the contractor's negligence. [1 Thompson on Negligence, sec. 685.] But it is said that this obligation of the contractor does not extend beyond those with whom he sustains some contractual relation, and does not include strangers, who though acting with due care, and being where they have a right to be, are injured in consequence of his negligence. This position is not without support, but we consider the recent decision of the Supreme

Court in the case of Young v. Oil Co., 185 Mo. 634, to be squarely against it.   The principle there approved is, "That in all cases in which any person undertakes the performance of an act which, if not done with care and skill, will be highly dangerous to the persons or the lives of one or more persons, known or unknown, the law 'ipso facto,' imposes as a public duty the obligation to exercise care and skill."   And in Huset v. Machine Co., 129 Fed. 865, Sanborn, Circuit Judge, said, "Actions for negligence are for breaches of duty.   Actions on contracts are for breaches of agreement.   Hence the limits of liability for negligence are not the limits of liability for breaches of contract, and actions for negligence often accrue where actions upon contracts do not arise and vice versa."   As stated by one author, "A man has a right that his personal safety shall not be infringed by the negligent exercise on the part of others of their rights."   Aside from duties and obligations imposed by his contracts, every man owes the duty to his fellow to refrain from inflicting personal injury upon him, either by common assault or by acts of negligence.   No contract made by him should have the effect of absolving him from the due observance of this duty.   Defendant while in control of the work of construction, and before the acceptance of the bridge by the county, was under obligation to strangers, who might be lawfully upon it, not to injure them by its negligence.

Defendant insists, however, that the county resumed control of the bridge, in fact accepted it from the contractor as completed in accordance with the terms of the contract, and by those acts adopted the structure as its own, thereby assuming a vicarious relation to the contractor, taking upon itself the burden of the wrongful acts of the latter.   Granting for argument, that the acts of the Commissioners amounted in law to an acceptance, we will determine the questions presented under that supposition.   It is said by plaintiff that the bridge as constructed was a nuisance, for the reason that it was a

dangerous obstruction to the highway from the beginning, and the statutes of Oklahoma relating to the subject of nuisance are pointed to as conclusively fixing liability upon defendant for the erection and maintenance of a nuisance, but we observe nothing in these enactments beyond a legislative recognition of well-settled principles. The building of the bridge was ordered and contracted for by constituted authority in the manner provided by law. As observed in the case of Payne v. Railway, 112 Mo. 6, "That cannot be a nuisance so as to give a common law right of action which the law authorized." [Words and Phrases Judicially Defined, vol. 5, page 4861; Transportation Co. v. Chicago, 99 U. S. 1. c. 640; Whitfield v. Carrollton, 50 Mo. App. 98.]

There is a marked distinction, though sometimes ignored, between causes of action based upon nuisance and those grounded in negligence. [1 Thompson on Negligence, sec. 1188; Dickinson v. New York, 28 Hun l. c. 256; Benjamin v. Railway, 133 Mo. 274.] In the former class the fact of negligence is not an essential element for the reason that a thing is a nuisance when of itself it constitutes an unlawful annoyance or a source of danger to others, and the author of it or the one who maintains it is held liable regardless of the degree of care exercised by him. His liability is of the character of an insurer. [Lanning v. Galusha, 135 N. Y. 239; Pach v. Geoffry, 67 Hun 461; Stoetzele v. Swearingen, 90 Mo. App. 588; Abbott v. Railway, 83 Mo. 276; Babbage v. Powers, 130 N. Y. 281; Hastings on Torts, p. 225.]

In this case if the defendant is to be held for the erection and maintenance of a nuisance in the public highway, it must be upon the ground that the bridge in its entirety was a dangerous obstruction regardless of what made it such. That is to say its dangerous condition may have been the result of defects in the design and plans, or it may have resulted from the negligence of the township in building the approaches. Obviously the

contractor should not be held liable if either of these possible causes produced the injurious result. The contractor is accountable for his own acts alone. The only ground upon which he can be held is that of failing to observe due care in the  performance of his  contract. Plaintiff's position on the subject of nuisance is untenable.

In passing we will dispose of the attacks made by defendant upon the petition.  While it is true that the first count contains the charge that the bridge as constructed was a nuisance, this appears as a conclusion predicated upon the acts of  negligence  averred.  The gravamen of the cause pleaded in both counts is negligence, and we incline to the view that it was proper for the court to overrule the demurrers and to submit the case to the jury upon both counts under the rule permitting the pleader to differently state the same cause of action in separate counts to meet different phases of proof.

This brings us to the question of the effect of an acceptance of the bridge by the commissioners upon the liability of the contractor for damages thereafter resulting from his negligence.  The general rule is that the contractor, after an acceptance of the work by the owner, is not liable to third parties, who have no contractual relations with him, for damages subsequently sustained by reason of his negligence in the performance of his contract duties.  [Winterbottom v. Wright, M. & W. 109; Heaven v. Pender, L. R. 9 Q. B. 302; Schade v. Gehner, 133 Mo. 252; Roddy v. Railway, 104 Mo. 234; Longmead v. Holliday, 6 Ech. 761; Collins v. Seldon, L. R. 3 Com. P. L. Cas. 495; Curtin v. Somerset, 140 Pa. 70; Necker v. Harvey, 49 Mich. 517; Daugherty v. Hertzog, 149 Ind. 255; Davidson v. Nichols, 93 Mass. 514; Marvin Safe Co. v. Ward, 46 N. J. L. 19.]  One of the reasons supporting the rule is stated by Alderson, B., in the leading case of Winterbottom v. Wright, supra, "If we were to hold that the plaintiff could sue in such case there is no point at which actions would stop. The

only safe rule is to confine the right to recover to those who enter into the contract. If we go one step beyond that there is no reason why we should not go fifty." But the better reason is that ordinarily in such cases there is found a break in the causal connection between the contractor's negligence and the injury. [Wharton on Negligence, 368.] It is the intervening negligence of the proprietor that is the proximate cause and not the original negligence of the contractor. By occupying and resuming possession of the work the owner deprives the contractor of all opportunity to rectify his wrong. Before accepting the work as being in full compliance with the terms of the contract he is presumed to have made a reasonably careful inspection thereof and to know of its defects, and if he takes it in the defective condition he accepts the defects and the negligence that caused them as his own, and thereafter stands forth as their author. When he accepts work that is in a dangerous condition the immediate duty devolves upon him to make it safe, and if he fails to perform this duty, and a third person is injured it is his negligence that is the proximate cause of the injury. His liability may be incurred either from his substitution for the contractor or from his neglect to repair. [Boswell v. Laird, 8 Calif. 469; Losee v. Clute, 51 N. Y. 494; Reed v. Fire Dist., 20 R. I. 574; Cross v. Koster, 17 App. Div. (N. Y.) 402; Smith v. Railroad, 201 Pa. St. 131; Mayor v. Cuniliff, 2 N. Y. 165; Congregation v. Smith, 163 Pa. St. 561; Salliott v. King Bridge Co., 122 Fed. 378; Elliott on Roads and Streets, 21 et seq.]

But there are well-defined exceptions to the rule discharging the contractor from liability through acceptance of the owner, to be collected from the following authorities: Heizer v. Kingsland, 110 Mo. 605; Huset v. Machine Co., 120 Fed. 865; McCaffery v. Mfg. Co., 23 R. I. 381; Lewis v. Terry, 111 Calif. 39; Woodward v. Miller, 119 Ga. 618; Slattery v. Colgate, 25 R. I. 220; Schubert v. Clark, 49 Minn. 331; Thomas v. Winchester,

6 N. Y. 397; Luke v. Litchfield, 42 N. Y. 351; Devlin v. Smith, 89 N. Y. 470; Gooldiner v. Standard Oil Co., 63 Fed. 400; Bishop v. Webber, 139 Mass. 411. Applying the principles upon which these exceptions are based that bear upon the case in hand, we are of the opinion that the defendant should not be excused from liability to the plaintiff, even under the supposition that the bridge was accepted by the commissioners. The facts, which the evidence tends to establish, that the structure was so defective as to be essentially and imminently dangerous to the safety of others; that the defects were so hidden or concealed that a reasonably careful inspection would not have disclosed them, and the danger resulting from them, and that these things were known to the defendant but not to the commissioners, left the liability of the defendant where it would have been had there been no acceptance. The flagrant character of the negligence and its potentiality, coupled with its concealment, amounted to a deception practiced upon the commissioners. There is no righteous principle upon which the obligation imposed by duty, upon the contractor, may be cast off under circumstances such as these. But for the facts just referred to, we would say that the commissioners resumed control of the bridge to the extent of releasing the contractor from liability for injuries subsequently inflicted upon the users thereof. It is not necessary to the proper disposition of the case to consider further this point.

And of the point made that defendant bridge company did not in fact build the bridge, but before any work was done assigned the contract to another company, into which it merged, there is enough evidence in the record to make this one of the issues for the jury to settle. The demurrer to the evidence was properly overruled.

Plaintiff asked the court to give but one instruction on his behalf, as follows: "If you find a verdict in favor of John Casey, you will assess his damages at such sum

. . . as will reasonably compensate him for whatever injuries, if any, you find from the evidence he has sustained as a direct result of the defendant's negligence, and in estimating the damages you will take into consideration," etc. In thus submitting the issue of negligence to the jury, without in any manner instructing them as to what facts, if found, would constitute negligence, the court left it to them to determine the law as well as the fact. This was reversible error. [Magrane v. Railway, 183 Mo. 119, 81 S. W. 1158; Gessley v. Railway, 26 Mo. App. 156; Goodwin v. Railroad, 75 Mo. 73; Ravenscraft v. Railroad, 27 Mo. App. 617; Gurley v. Railway, 93 Mo. 445; Senate v. Railway, 41 Mo. App. 295.] It may be conceded, as argued by the plaintiff, that when the fact of negligence is admitted, it is not necessary to submit it to the jury. [Wilbur v. Railway, 110 Mo. App. 689.] But plaintiff is wrong in his conclusion that defendant conceded either its negligence, or that the fall of the bridge resulted therefrom. The only fact upon which this conclusion is based is the admission of the foreman that he did not mix the concrete before putting it in place, but, in face of evidence to the contrary, we cannot say as a matter of law that this was a negligent method, or that it resulted in defective concrete work, or that the bridge collapsed on account of defective foundations and piers. It was for the jury to say whether or not defendant was negligent and that the injury resulted therefrom.

We find no other substantial error in the case, but for that noted the judgment is reversed and cause remanded. All concur.