TROLL, Administrator of SHELLEY, deceased, Respondent, v. UNITED RAILWAYS COMPANY OF ST. LOUIS, Appellant.

St. Louis Court of Appeals, October 30, 1906.

PRACTICE: Negligence: Variance.   In an action for damages on account of personal injuries received by the plaintiff while a passenger on defendant's street car, the petition alleged that through the negligence of defendant the car collided with the shafts of a wagon standing on the street, whereby the plaintiff was knocked off the car and killed.   An instruction authorizing a recovery by showing that through defendant's negligence the shafts of the wagon caught the plaintiff and dragged him off the car was proper and was not open to the objection that it authorized a recovery for negligence not alleged.

Appeal from St. Louis City Circuit Court.—*Hon. O'Neill Ryan*, Judge.

AFFIRMED.

*Glendy B. Arnold* for appellant.

(1)   The court erred in giving to the jury plaintiff's first instruction, because said instruction authorizes a recovery for an act of negligence which the evidence failed to show caused or contributed in any way to the injuries from which deceased died.   Meily v. Railroad, 107 Mo. App. 466; Campbell v. Railroad, 175 Mo. 181; Reno v. Railroad, 180 Mo. 487, 488; Heinzle v. Railroad, 182 Mo. 559.   (2)   The court erred in giving to the jury plaintiff's first instruction, because said instruction assumes the existence of controverted facts,

and is misleading. Van Natta v. Railroad, 133 Mo. 21; Siegrist v. Arnot, 10 Mo. App. 206.

*Hickman P. Rodgers* for respondent.

STATEMENT.—On September 21, 1905, John F. Shelley was a passenger on one of defendant's street cars, traveling west on Easton avenue, in the city of St. Louis. On account of the crowded condition of the car and the rear platform Shelley stood on the steps of the rear platform. A one-horse coal wagon was standing on the north side of Easton avenue, facing south, with the shafts of the wagon projecting so near the track as to rub against the side of the car as it passed and they shoved or knocked Shelley off the steps onto the street with such force as to cause his death. The suit was brought by the public administrator, of the city of St. Louis, having in charge the estate of Shelley.

The negligence alleged in the petition is as follows:

"That while said car was at said time traveling westward on Easton avenue and approaching near to Vandeventer avenue, in said city, and while said Shelley was a passenger thereon, defendant's servants, agents and employees, in charge thereof carelessly and negligently attempted to run said car by or past a wagon standing on and across the north side of said Easton avenue, in such manner that the shafts thereof, extending southwardly, were in close proximity to the track upon which said car was running, and carelessly and negligently caused or permitted the said car to collide with said wagon, or shafts, or other parts thereof, and that by and through said collision the said Shelley was knocked or thrown off said car, of which he was at the time a passenger, and killed; and that after said car came into actual contact with said wagon, or parts thereof, and was passing same, while in actual contact therewith, and before said Shelley was injured, the servants, agents and employees of defendant, in charge of said

car, ran same at a reckless rate of speed, and carelessly and negligently failed to stop said car, when to have stopped same at the last mentioned time would have avoided all injury to said Shelley."

The answer was a general denial and a plea of contributory negligence.

On the part of plaintiff the evidence tends to show that Shelley was a bachelor and his nearest of kin was a brother and sister. The front and rear platforms of the car were drawn in and hence were not so wide as the body of the car. A wooden bar, held by sockets attached to the body of the car, and projecting a few inches beyond the body, served as a handhold for passengers in getting off and on the car. About half way between the body of the car and the rear end of the platform, a steel or iron rod extended from the floor of the platform to the roof of the car, and answered the double purpose of supporting the roof and as a handhold for passengers. According to plaintiff's evidence, all the seats in the car were occupied and the aisles were crowded with passengers, as well as the rear and front platforms, when Shelley took passage on the car, and for want of room in the car or on the platform, he stood on the steps, holding on to the wooden handrail. Near Vandeventer avenue a one-horse coal wagon was standing, on the north side of Easton avenue, with the wheels backed against the curb and the horse's head extending over the north rail of the track on which the car was traveling. The car was brought to a standstill and the driver of the wagon went to the horse's head and turned him east. The motorman then said, "is it all right?" The driver answered, "Yes, go ahead," and the motorman started the car forward. The shafts of the wagon came in contact with and rubbed against the side of the car. Plaintiff's witnesses testified that the shafts commenced to scrape the car at its front end and continued the full length of the car, making considerable noise, but notwithstanding this the speed of the car was greatly accel-

erated, and when the shafts reached the end of the car
and struck the wooden handrail the force was so great
that the handrail was torn from its sockets and the iron
rod supporting the roof was torn loose; that the shafts
gave a spring when they struck the wooden handrail, and
Shelley and two other passengers, riding on the steps,
were knocked or dragged off. Shelley only was seriously
hurt.

Defendant's evidence tends to show that at the time
the motorman set the car in motion to pass the horse and
wagon there was a space of six or eight inches between
the shaft and the body of the car, allowing ample room
for the car to pass in safety to the passengers. About
the time that the rear end of the car was passing the
horse's head the horse moved toward the car and brought
the shaft into contact with the handhold on the rear
platform of the car and with the deceased's body, knock-
ing deceased and two other passengers to the street and
tearing out both handrails. There was no noise or any-
thing to indicate that a collision had occurred between
the shaft and the car until the crash made by the break-
ing out of the handrails on the rear end platform of
the car. The rear platform of the car and the step there-
of were so constructed that the bodies of passengers
standing on them did not project beyond the outside
line of the car. There was ample room on the inside of
the car for those passengers standing on the steps of
the rear platform.

Defendant also introduced evidence tending to show
that Shelley left a widow (a woman known as Millie
Winchester). The jury found for plaintiff on this ques-
tion of fact and as no error is assigned on this branch
of the case it need not be further noticed.

The trial resulted in a verdict for the plaintiff for
two thousand dollars. Motions for new trial and in ar-
rest were filed in time, both of which were overruled,
whereupon defendant appealed.

BLAND, P. J. (after stating the facts).—1. The only error assigned and discussed in the briefs of counsel for defendant is the action of the court in giving the following instruction for plaintiff:

"If the jury believe from the evidence that John F. Shelley died in the city of St. Louis at the time hereinafter mentioned, and was at the time of his death a bachelor without adopted minor child or children; that plaintiff, as public administrator of the city of St. Louis, took charge of the estate of said deceased and instituted this suit within one year of said death; and if the jury further believe from the evidence that, on the eighteenth day of September, 1905, defendant was engaged in the business of operating electric street cars in said city and of carrying passengers on same for hire, and on said day, by its servants or agents, received the said Shelley as a passenger on one of its said cars; and that the car was so crowded he found it necessary to stand on the lower step of the rear platform; and if you further believe from the evidence that while said car was traveling westward on Easton avenue and approaching near to Vandventer avenue, and that while said Shelley was a passenger thereon, the said car collided with the shafts, or other parts, of a wagon standing on and across the north side of Easton avenue, and that as a direct result of said collision if any, the said Shelly was knocked or thrown off said car and killed, received injuries from which he afterwards died; then the court instructs the jury that if the servants or agents of defendant in charge of and running said car, could, by exercising, in the management and control of said car, the degree of care and watchfulness defined in instruction No. 3 have prevented said collision, if any, or, by the exercise of the same degree of care, could have stopped said car after it came into contact with said wagon, and before said Shelly was injured, but failed to do so, then your verdict must be for the plaintiff; provided you further believe from the evidence that said

Shelley was at and prior to the time of said injury, was not guilty of contributory negligence, as defined in the other instructions given."

It is contended, first, that the instruction authorized a recovery for an act of negligence not alleged in the petition, and, second, that the instruction assumes the existence of controverted facts. The argument on the first point is, that the evidence conclusively shows that Shelly was dragged or knocked off the car steps by the wagon shafts, and hence his injury and death were not caused by the collision between the car and shafts whereas the petition alleges Shelley was knocked or thrown off the car by the collision between the car and shafts. If the car had not collided with the shafts Shelley would not have been knocked or dragged from the car. The negligence alleged and shown by plaintiff's evidence consisted in permitting the car to collide with the shafts of the wagon, resulting in Shelley's death. The procuring cause of Shelley's death was the collision; the particulars of the collision, including its effect upon shelley, were matters of evidence.

In Magrane v. Railway, 183 Mo. 119, the plaintiff was trying to escape from the danger of an imminent collision of the car upon which he was a passenger, and was pushed off and injured by other panic-stricken passengers. It was contended by defendant that plaintiff's injury was not caused by the collision, which took place immediately after he was pushed off. Answering this contention, the court, at page 129, said:

"The rush of the panic-stricken passengers which threw the plaintiff off the car was the result of the impending collision and was in legal contemplation as much the effect of the collision as consequences which followed it."

The consequences which followed the collision of the car with the shafts of the wagon were that Shelley was knocked or dragged off the car and killed. We do not think there is any merit in the contention.

2. The controverted facts it is alleged the instruction assumes are not set out in defendant's brief, nor have we been able to find them on a careful reading of the instruction. The instruction is not open to fair criticism. It properly declares the law of the case and is approved. The judgment is affirmed. All concur.