Tammy COLEMAN, Appellant,

v.

CITY OF KANSAS CITY, MISSOURI, et al., Respondent,

Superior Asphalt Company, Respondent,

Hunt Midwest Mining, Inc., Respondent.

No. WD 45879.

Missouri Court of Appeals, Western District.

June 22, 1993.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 27, 1993.

Michael D. Gibbons, Kansas City, Mark B. Hutton and Derek S. Casey, Wichita, KS, for appellant.

Jeffrey Hess, Asst. City Atty., for City of Kansas City, MO.

Norman Reichel, Kansas City, for Hunt Midwest, Inc.

Paul D. Cowing and Teresa A. Woody, Kansas City, for Superior Asphalt Co.

Before BRECKENRIDGE, P.J., and SHANGLER and SPINDEN, JJ.

SHANGLER, Judge.

The plaintiff Tammy M. Coleman brought suit for damages against the defendants City of Kansas City, Missouri [City], Hunt Midwest Mining, Inc. [Hunt] and Superior Asphalt Company [Superior] for injuries sustained when the vehicle she was operating left the roadway attempting to avoid an oncoming encroaching vehicle, struck the guardrail and overturned. The petition alleged that the City maintained and operated the public roadway known as Stark Avenue, and that the City was negligent in the design, construction and maintenance of that thoroughfare. The petition alleged also that Hunt and then Superior, successively, was negligent in the construction of the surface and shoulders of the roadway.

The court entered summary judgment for the defendants Hunt and Superior on

the ground that they owed no duty to Coleman. The court found that there was no just reason for delay and designated the summary judgment in favor of Hunt and Superior as final for purpose of appeal. The claim against the City remains pending. The plaintiff Coleman appeals from the summary judgment.

These facts, not disputed, are material to the litigation and judgment. On June 7, 1977, the City entered into a contract with Midwest Precote Company, predecessor of defendant Hunt, to resurface Stark Avenue and other streets with asphalt. The work was performed from June 7, 1977 to December 22, 1977. On June 23, 1982, the City entered into a contract with Superior to overlay Stark Avenue and other streets with asphalt. On November 24, 1982, the work was certified by the City as completed "in accordance with the plans and specifications therefor." On March 17, 1987, the plaintiff Coleman was operating her vehicle along Stark when the accident and infliction of injury occurred. In April 1988, Coleman filed a petition for damages against the City. In June 1990 the petition was amended to join Hunt as an additional defendant, and in February 1991, the third amended petition added Superior as a party defendant.

The order of summary judgment explains the reasons for decision:

> In the case at bar, no genuine issue of material fact exists to preclude summary judgment. Both defendants Superior and Hunt have shown by uncontroverted evidence that their work, as contractors, to provide an overlay of asphalt on existing streets in 1982 and 1977, respectively, was accepted by the principal with whom they contracted, the City of Kansas City, Missouri. Under Missouri law, once a contractor's work has been accepted by the principal, the contractor has no liability for injuries to third parties with whom the contractor has no contractual relationship. [Citations omitted.]

When faced with a proper motion for summary judgment supported by affidavits, the party opposing the motion must come forward with specific facts demonstrating the existence of a material issue of fact. [Citations omitted.] Plaintiff in this case has failed to meet that burden in that she has not come forward with any specific facts that controvert the acceptance by the City of the work performed by defendants Superior and Hunt. Likewise, plaintiff has failed to come forward with any facts that would except her claims from the general rule of acceptance of a contractor's work as stated above.

The appeal articulates two points relied on to set aside the summary judgment: (1) The trial court incorrectly relied upon the acceptance rule, a doctrine already renounced by our decisions. (2) Issues of material fact as to the contractors', Hunt and Superior, duty of care to Coleman preclude summary judgment.

■ The argument posits as "the almost universal rule" that "a contractor is liable to all those who may foreseeably be injured by the structure, not only when he fails to disclose dangerous conditions known to him, but also when the work is negligently done." PROSSER & KEETON, THE LAW OF TORTS § 104A at 723 (5th ed. 1984). This doctrine rejects the acceptance rule in favor of a duty of care based on negligence principles and foreseeability. Under this rule, a contractor

> ... is subject to liability to others upon or outside of the land for physical harm caused to them by the dangerous character of the structure or condition after his work has been accepted by the possessor, under the same rules as those determining the liability of one who as manufacturer or independent contractor makes a chattel for the use of others. Restatement (Second) of Torts § 385 (1965).

In gist, the principle of foreseeability imposes liability upon a contractor for injury to a third person occurring after the completion of the work and its acceptance by the principal, where the work if negligently performed is reasonably certain to endanger third persons.

This argument attributes a sweep to our opinions that they do not promise. It cites *Chubb Group of Ins. Companies v. C.F.*

*Murphy & Assoc.*, 656 S.W.2d 766 (Mo. App.1983), as the recognition of the "modern rule" and the rejection of the "obsolete concept" of the acceptance doctrine. The argument then cites *Singleton v. Charlebois Constr. Co.*, 690 S.W.2d 845 (Mo.App. 1985), as a "virtual adoption" of § 385 of RESTATEMENT (SECOND) OF TORTS (1965) and the disposition of our court to "further distance itself from the work-accepted doctrine [and] base a contractor's duty of care on concepts of foreseeability."

*Chubb* does indeed recite: "[W]e find that architects and contractors owe a duty to exercise the care required of their professions to persons with whom they are not in privity when the injury to those third parties is foreseeable." *Chubb Group of Ins. Companies v. C.F. Murphy & Assoc.*, 656 S.W.2d at 775[8, 9]. That this application of principle, however, is conditional and an exception to the acceptance rule is immediately evident from the sequent acknowledgement: "This is true even when their work has already been accepted by the structure's owner, *when the specific conditions enumerated in* Begley" are present. *Id.* [Emphasis added.] The supreme court in *Begley v. Adaber Realty & Inv. Co.*, 358 S.W.2d 785, 791[6–8] (Mo. 1962), adopted, as an exception to the general rule of the nonliability of the construction contractor after acceptance of the work for injury to third persons not in privity, the early pronouncement of this court in *Casey v. Hoover*, 114 Mo.App. 47, 89 S.W. 330 (1905):

> Where the evidence establishes
>
> ... that the structure was so defective as to be essentially and imminently dangerous to the safety of others, that the defects were so hidden or concealed that a reasonably careful inspection would not have disclosed them and the danger resulting from them, and that these things were known to the [contractor], but not to the [owner]

the liability of the contractor was left "where it would have been had there been no acceptance." *Id.*, 89 S.W. at 335.

In this formulation, "if the construction is such that danger may be anticipated therefrom by reason of its very defects it is imminent" or inherent. *Begley v. Adaber Realty & Inv. Co.*, 358 S.W.2d at 791[9]. It is in the context of imminent or inherent danger, and not the creation of a general duty, therefore, that *foreseeability* of injury to persons not in privity functions in the exception to the rule of nonliability after acceptance. *See* and *cf.*, *Madden v. C & K Barbeque Carryout, Inc.*, 758 S.W.2d 59, 62 (Mo. banc 1988). It is within that context also that we read the reference to § 385 of RESTATEMENT (SECOND) OF TORTS (1965) in *Singleton v. Charlebois Constr. Co.*, 690 S.W.2d 845 (Mo.App.1985), cited by the plaintiff.

The duty of a contractor to third persons injured on the premises after completion and acceptance of the work was most recently considered by our supreme court en banc in *Gast v. Shell Oil Co.*, 819 S.W.2d 367 (Mo. banc 1991). It was urged upon the court in *Gast*, as now upon us, to adopt the "modern rule," in which "acceptance by the owner does not terminate the liability of the contractor for negligent construction, citing RESTATEMENT (SECOND) OF TORTS § 385 (1965)" and the writings of commentators. *Id.* at 371[2]. The court referred to the general rule, as cited in *Honey v. Barnes Hosp.*, 708 S.W.2d 686 (Mo.App.1986): "After the owner accepts a structure, the general rule is that a general contractor is not liable to persons with whom he did not contract." *Honey v. Barnes Hosp.*, 708 S.W.2d at 700. The court then cited the exception to the general rule of nonliability after acceptance, as rendered by the supreme court in *Begley* as to injury to a party not in privity, from a structure "so defectively constructed as to be essentially imminently dangerous to the safety of others," *Gast v. Shell Oil Co.*, 819 S.W.2d at 370, to decide that the case under review did not fall within *Begley* and therefore denied the claims based on the negligence of the contractor.

Whatever the validity of an argument that the better rule holds a contractor to a general standard of reasonable care to protect third persons injured by the contractor's negligence even after the acceptance

of the work, *Gast* implicitly rejects that rule, and *Gast* governs our decision.[1]

Alternatively, the plaintiff argues that the continued viability of the acceptance rule assumed, summary judgment is nevertheless precluded because genuine issues of material fact remain as to the exceptions to the rule. The plaintiff frames the applicable exceptions as:

> (1) when the structure is imminently or inherently dangerous but the defects are so hidden and concealed that a reasonably careful inspection would not have revealed them, and the contractor (but not the person accepting the construction) had knowledge, actual or constructive, of the dangerous condition and the resultant risk to human life; and (2) when the defect is fraudulently concealed by or is the result of flagrant negligence on the part of the contractor.

The first exception is that announced in *Casey v. Hoover*, 89 S.W. at 335, and since followed throughout our decisions. The second is held by other jurisdictions.

■ Rule 74.04(c) directs that summary judgment "shall be entered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Once a movant has met this burden, the non-movant's only recourse is to show by counter-affidavits, depositions, answers to interrogatories, or admissions on file, that one or more of the material facts is genuinely disputed. *Andes v. Albano*, 853 S.W.2d 936, 940 (Mo. banc 1993). "A 'genuine issue' is a dispute that is real, not merely argumentative, imaginary or frivolous." *ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 382 (Mo. banc 1993). We review the record in the light most favorable to the party against whom

judgment was entered, and accord the non-movant the benefit of the reasonable inferences from the record. *Id.*

■ It is the substantive law that identifies which facts are material to a claim, and thereby determines which facts are critical and which facts are not relevant to the summary judgment. *American Family Mut. Ins. Co. v. Lacy*, 825 S.W.2d 306, 313 (Mo.App.1991). It is evident that the defendant contractors, Hunt and Superior, owed no duty of care to the plaintiff Coleman after the construction work on Stark Avenue was accepted by the City. The parties quite correctly identify as the fact material to recovery by the plaintiff the issue that the work was not yet accepted by the City at the time of her injury.

The motion for summary judgment of each contractor, Hunt and Superior, pleaded that its work on Stark Avenue at the site of the accident was completed and accepted by the City before the casualty, and therefore there was no genuine issue of material fact that either owed a duty to the plaintiff Coleman. The motions were supported by the interrogatory responses of the defendant City that the work under the Hunt contract was satisfied and completed in December 1977, and by affidavit with the formal certification of the City appended that the Superior contract was satisfied and completed in October 1982.

The plaintiff contests the sufficiency of that proof for purposes of summary judgment and contends that a genuine issue of the material fact of acceptance remains. She alludes to interrogatory responses by the City that a certificate of completion and acceptance of the Hunt work was not in its file, that the City did not supervise the daily work performed by Hunt, could not name the inspector at the site of the Hunt contract work, and the interrogatory response by Hunt that its records as to the resurfacing of Stark were destroyed, as proof that the City did not accept the contract work performed by Hunt. She alludes also to the interrogatory answers of defendant Superior that no written inspec-

---

1. There is no Missouri case cited, among the profusion briefed on the issue, that allows a claim against a contractor by one not in privity, on principles of general tort liability, for injury from the construction after acceptance of the work.

tion records as to the compliance or specification of the contract and city codes were kept by Superior and the interrogatory answers that Superior had no knowledge of who made the inspections for the City and were not given copies of any such reports, as proof that a genuine issue of material fact remains as to acceptance by the City of contract work performed by Superior.

 The acceptance of the work that functions to relieve a contractor of liability to third persons is a practical acceptance after the completion of the work, and a formal acceptance is not essential. *Gruhalla v. George Moeller Constr. Co.*, 391 S.W.2d 585, 597[12] (Mo.App.1965). It is the control or right to control that the contractor has over the premises on which the work is being performed that renders the contractor liable to third persons. *Id.* The occupation or resumption of possession of the worked premises by the owner amounts to resumption of control, and hence of liability for injury to others from defects caused by the negligence of the contractor. *Casey v. Hoover*, 89 S.W. at 334. Acceptance of the work is attended by the presumption that the owner [or other principal] made a reasonably careful inspection of the work, knows of its defects, and so "accepts the defects and the negligence that caused them as his own." *Id.* Whether there lacked actual inspection, as the evidentiary materials asserted by the plaintiff in opposition to the summary judgment issue of acceptance, therefore, is quite irrelevant to the proof of any material issue.

 Accordingly, in a claim by a third person against a contractor governed by the substantive law of acceptance, an essential element of the recovery is that the plaintiff prove that the contractor "was at the time of the accident in control of the premises upon which [plaintiff] was injured." *Gruhalla v. George Moeller Constr. Co.*, 391 S.W.2d at 597[12]. The burden of proof was upon the plaintiff to

establish that the contractor was yet in charge and control of the work at the time of the accident. *Id.* The evidentiary materials presented by the defendant contractors in support of the motions for summary judgment show the absence of a genuine issue of material fact on an essential element of the plaintiff's claim upon which she would have the burden of persuasion at the trial that the contractors were yet in control of the work at the time of her injury and so owed her a duty of care and are entitled to judgment as a matter of law. Rule 74.04(c). The materials presented by the plaintiff in response do not amount to specific facts probative of a genuine issue for trial. Rule 74.04(e). The defendants are entitled to judgment as a matter of law on the pleadings of the petition taken as a claim for negligence damages against the contractors subject to the substantive law of the acceptance rule.

The order of summary judgment in favor of the defendant contractors Hunt and Superior was entered "against plaintiff Tammy M. Coleman on all of plaintiff's claims."

On this appeal from the summary judgment the plaintiff asserts nevertheless that if recovery is foreclosed by the acceptance rule, then there remain "genuine issues of material fact precluding summary judgment surrounding the exceptions" to the acceptance rule. The argument alludes to the record, excerpts from the depositions of experts and affidavits and other evidentiary sources, to prove that the widths of Stark Avenue in the vicinity of the casualty, the drop-offs, and other physical characteristics of the roadway were so hidden and concealed that a reasonable inspection would not have disclosed them, and so constituted imminently dangerous hidden hazards and an exception to the acceptance rule. The argument assumes that because the proof of liability on a different theory is available to the plaintiff, that precludes summary judgment on the theory pleaded.[2]

**2.** Actually, the third amended petition of the plaintiff Coleman does not allege that each contractor "was at the time of the accident in control of the premises upon which [plaintiff] was injured," and therefore does not state a claim

for relief where the acceptance rule applies. *Gruhalla v. George Moeller Const. Co.*, 391 S.W.2d 585, 597[12] (Mo.App.1965). That lapse may be explained by the major premise of the appeal [and, presumably, of the petition and

The court of appeals reviews the record on summary judgment in the light most favorable to the party against whom judgment was entered. *Zafft v. Eli Lilly & Co.,* 676 S.W.2d 241, 243[2–5] (Mo. banc 1984). The order of summary judgment will not be set aside on review if supportable on any theory within the scope of the pleadings and the evidentiary materials before the court on the motion. *Berneathy v. Pursley,* 832 S.W.2d 524, 525[1, 2] (Mo. App.1992); Rule 74.04(c). Thus, the role of the *pleadings* is focal to the adjudication of a valid summary judgment, as to any other judgment on the merits. Pleadings define the issues and form the foundation of the process of adjudication and judgment. *Johnson v. Flex–O–Lite Mfg. Corp.,* 314 S.W.2d 75, 79[3] (Mo. banc 1958). A judgment not responsive to the issues made by the pleadings is *coram non judice* and, to that extent, void. *Brown v. Wilson,* 348 Mo. 658, 155 S.W.2d 176, 180[13–16] (1941).

The third amended petition, the pleading upon which the defendants joined issue, is a claim on the theory of negligence in three separate counts. Count I alleges a cause of action in negligence against the City of Kansas City as operator of Stark Avenue. Count II alleges the negligence of defendant Hunt Midwest Mining, Inc. under the 1977 contract, and Count III alleges the negligence of defendant Superior Asphalt Company under the 1982 contract.[3]

Count I alleges that the City was negligent in the design, construction and maintenance of Stark Avenue in the particulars alleged in paragraph 8, a through t. *See* Appendix A. Count II alleges a claim against Hunt and incorporates by reference paragraph 8 [among others] of Count I, and in paragraph 14 alleges that Hunt "was negligent and careless in one or more of the respects enumerated in paragraph 8" and in one or more of the recited in paragraph 14, a through i. *See* Appendix A. Count III alleges a claim against Superior and specifically incorporates the incidents of negligence enumerated in paragraph 8 of Count I and paragraph 14 of Count II. *See* Appendix A.

In an action for negligence, the plaintiff must prove (1) a duty of the defendant to the plaintiff; (2) the defendant failed to perform that duty; and (3) the breach of duty by the defendant was the proximate cause of the injury to the plaintiff. *Krause v. U.S. Truck Co.,* 787 S.W.2d 708, 710[2, 3] (Mo. banc 1990). Cognately, a petition in negligence must state facts that demonstrate a duty owed from the defendant to the plaintiff, breach of the duty, and damages as a result. *Aaron v. Havens,* 758 S.W.2d 446, 447[1] (Mo. banc 1988). The plaintiff argues that summary judgment is precluded because "genuine issues of material fact" remain as to the breach of duty of the defendant contractors under the exception to the acceptance rule. In an action for negligence, our pleading practice requires that the plaintiff allege sufficient ultimate facts to inform the defendant of the duty and breach of duty with which the defendant is charged. *Maybach v. Falstaff Brewing Corp.,* 359 Mo. 446, 222 S.W.2d 87, 92[10–12] (1949). And, although negligence is an ultimate fact which may be pleaded as such, if the facts that constitute the duty and breach of duty are known to the plaintiff, they are to be stated with reasonable particularity. *Id.* Under our decisions, a duty of care by a contractor to third persons not in privity arises, even after acceptance of the work by the owner, where the work is so defectively done as to be imminently dangerous and the defects are so hidden and concealed that a reasonably careful inspection would have not revealed them, and the contractor had knowledge, actual or constructive, of the dangerous condition and the resultant risk to human life. *Casey v. Hoover,* 89 S.W. at 335; *Begley v. Adaber Realty & Inv. Co.,* 358 S.W.2d at 791[9]; *Gast v. Shell Oil Co.,* 819 S.W.2d at 371[2].

---

trial litigation] as is manifest by the plaintiff's brief: "I. THE LOWER COURT INCORRECTLY RELIED UPON THE ACCEPTANCE RULE WHICH THIS AND MOST COURTS THROUGHOUT THE NATION REJECTED IN FAVOR OF GENERAL NEGLIGENCE PRINCIPLES GOVERNING A CONTRACTOR'S DUTY OF CARE OWED TO FORESEEABLE THIRD PARTIES."

3. *See* APPENDIX A, PLAINTIFF'S THIRD PETITION FOR DAMAGES

There is no allegation of the ultimate fact of an imminently dangerous defect so hidden and concealed that a reasonably careful inspection would not reveal, nor of evidentiary fact from which that ultimate fact could be inferred, in either the Count I pleading against the City as incorporated into the Count II pleading against contractor Hunt, or of the City and Hunt pleadings then incorporated into the Count III pleading against contractor Superior. *See* Appendix A.

Count II and Count III, when accorded every reasonable and favorable intendment as pleadings in negligence, do not inform the defendant contractors of the charges of duty and breach of duty they were to meet. They fail to invoke principles of law that entitle them to relief under the exception to the acceptance rule. *Asaro v. Cardinal Glennon Memorial Hosp.*, 799 S.W.2d 595, 597[1] (Mo. banc 1990); *Faheen by Hebron v. City Parking Corp.*, 734 S.W.2d 270, 274[10] (Mo.App.1987).

The plaintiff also raises on appeal the point that "genuine issues of material fact preclude summary judgment because of the statute of limitations." The plaintiff argues that her action against defendant Hunt is timely under §§ 516.100, 516.097 and 516.170, so that summary judgment was precluded on that ground. The order of summary judgment rests on the failure of the plaintiff to show a genuine issue of the material fact that work of the contractors had been accepted by the City before the injury to the plaintiff. The effect of the statute of limitations on the claim of the plaintiff was neither adjudicated nor necessary to the judgment.

The order of summary judgment in favor of the defendants Hunt and Superior is affirmed.

All concur.

## APPENDIX A

### PLAINTIFF'S THIRD AMENDED PETITION FOR DAMAGES

### COUNT I

COMES NOW, Plaintiff, Tammy M. Coleman, and for her cause of action against Defendant, City of Kansas City, states and alleges as follows:

. . . . .

8. Defendant City of Kansas City, Missouri was negligent and careless in the design, construction (including supervision thereof), and maintenance of the aforesaid thoroughfare in one or more of the following respects:

a) The roadway commencing at a point 400 feet north of the point of impact with the guardrail was excessively narrow, varying from a width of approximately 18.7 feet to a width of 17.4 feet at the guardrail;

b) The roadway South of the point of impact was also less than 20' wide, requiring oncoming vehicles to straddle the centerline to cross the bridge;

c) The crest of the hill that is approximately 300 feet north of the point of impact with the guard rail has an inadequate and limited sight distance of approximately 90 feet, causing severe sight restriction and diminishing the preview time available for the roadway ahead;

d) Commencing at the crest of the hill approximately 300 feet north of the point of impact with the guard rail, the southbound roadway in advance of the subject guard rail has a reverse curve that is kinked where the second curve meets a straight section of roadway just north of the culvert, and this constituted an unreasonably dangerous roadway condition in view of the overall roadway condition;

e) Immediately north of the subject culvert and guard rail, the west edge of the pavement has an edge drop off varying in height of up to 7 inches, which condition is unreasonably dangerous;

f) The downhill roadway grade on the southbound approach to the culvert and guard rail is unreasonably steep in view of the overall condition present and is in fact a steep 9.8 herein alleged, made the roadway defective and unreasonably dangerous;

g) The subject guard rail was too short to have any strength or beam continuity, did not adequately protect drivers from colliding with the hazardous culvert, lacked any end treatment to prevent impalement, and actually increased the total hazard of the roadside location;

h) There were at the time of the accident no adequate warning signs posted, on either direction along Stark Avenue altering drivers to the narrow and other dangerous conditions of said roadway;

i) Defendant constructed and maintained the surface and shoulder of the roadway with a sharp drop off at the edge of the roadway north of the guardrail in a manner unreasonably dangerous for motorists travelling the roadway;

j) Defendant failed to trim, cut, maintain and clear the excessive amounts of brush, trees, limbs, grass and other visual obstacles so that travelling motorists could properly view the surface of the roadway, the edge of the roadway and the extremely sharp drop off of the edge of the roadway;

k) Defendant constructed and maintained the shoulder and edge of the roadway in such a fashion as to allow a sharp drop off a short distance to the north of the culvert and guardrail in such a fashion so that Plaintiff's car could not negotiate a return to the pavement, thereby forcing Plaintiff's vehicle into a collision with the guardrail and culvert;

l) Defendant failed to properly maintain adequate lighting on said Stark Avenue both North and South of the point of impact so that drives could adequately see and be warned of the dangerous conditions of said roadway;

m) Defendant maintained and constructed the contour of the roadway in such a manner that southbound vehicles were inclined to drive slightly off the pavement and onto the shoulder and northbound drivers were inclined to straddle or crowd the centerline;

n) Defendant maintained and constructed the roadway in an unsafe condition and did specifically fail to maintain the edge of the roadway in a safe condition and failed to adequately maintain the shoulder of said roadway;

o) Defendant failed to warn southbound motorists of the drop off portion at the edge of the roadway, of the absence of any shoulder, and of the likelihood that vehicles could easily be thrown out of control due to the dangerous condition of the roadway;

p) Defendant failed to maintain and construct a straight roadway so as to enable vehicle operators to avoid driving off the pavement and into the ditch along the west side of the roadway;

q) Defendant failed to properly construct and maintain the surface of the roadway in a sufficiently wide manner so as to prevent vehicles from driving off the surface of the roadway and onto the shoulder and into the unreasonably dangerous drop off and guardrail;

r) Defendant failed to alleviate this unreasonably dangerous condition in the stretch of Stark Avenue from 2600 Stark Avenue to 3100 Stark Avenue despite its prior notice and knowledge thereof and despite previous accidents in the same general locality;

s) Defendant failed to properly inspect and/or to correct the dangerous condition of Stark Avenue from 2600 Stark Avenue to 3100 Stark Avenue.

t) Defendant failed to follow or ensure compliance by the road construction contractor with its own road design standards or other applicable standards in effect when this road surface was constructed in or about the year 1978, and in particular, standards pertaining to road and lane widths, uniforming of road and lane widths, areas of recovery, safe guardrail construction and design, as well as standards pertaining to safe grades, safe field of vision, and road contours.

. . . .

## COUNT II

COMES NOW, Plaintiff, Tammy M. Coleman, and for her claim and cause of action

against Defendant Hunt Midwest Mining, Inc., states and alleges as follows:

11. Plaintiff, Tammy M. Coleman, incorporates by reference paragraphs, 1–10 of Count I as though fully stated herein.

13. In June, 1977, Midwest Precote Company, now known as Hunt Midwest Mining, Inc., entered into an agreement with the City of Kansas City, Missouri whereby the City contracted with Midwest Precote to build and construct the surface of the roadway known as Stark Avenue specifically from 2600 Stark Avenue to 3100 Stark Avenue.

14. Acting under contract with the City of Kansas City, Missouri and acting on its own behalf, Defendant Hunt Midwest Mining, Inc., was negligent and careless in one or more of the respects enumerated in paragraph 8 and in one or more of the following respects:

a) Defendant designed and constructed the surface and shoulder of the roadway from 2600 Stark Avenue to 3100 Stark Avenue with a sharp drop off edge of the roadway in a manner unreasonably dangerous for motorists traveling the roadway;

b) Defendant failed to properly construct a shoulder for the roadway from 2600 Stark Avenue to 3100 Stark Avenue, thereby failing to allow an area for motorists to negotiate a return to the pavement;

c) Defendant failed to properly construct and/or replace the guardrail so that it would adequately protect drivers from colliding with the hazardous culvert;

d) Defendant failed to construct the surface of the roadway to the minimum specified width, and failed to construct the lanes to the specified minimum width, and failed to construct the lanes to uniform widths, thereby creating a condition that caused northbound traffic to straddle or crowd the centerline and southbound vehicles to move to the right where the road drops off;

e) Defendant failed to alleviate the unreasonably dangerous condition in the roadway from 2600 Stark Avenue to 3100 Stark Avenue;

g) [sic] Defendant failed to properly construct the roadway in a manner that allowed an area of safe recovery for vehicles that momentarily leave the roadway;

h) Defendant failed to construct and design a straight and wide roadway so as to enable vehicles to avoid driving off the drop-off portion at the edge of the roadway;

i) Defendant failed to properly lay the asphalt so that it was smooth and unobstructed so that drivers would not loose [sic] control of there [sic] vehicles.

· · · · ·

## COUNT III

COMES NOW, Plaintiff, Tammy M. Coleman, and for her claim and cause of action against Defendant Superior Aphalt [sic] Company, states and alleges as follows:

16. Plaintiff, Tammy M. Coleman, incorporates by reference paragraphs 1–15 of Counts I and II as though fully stated herein.

· · · · ·

18. In July, 1982, Superior Asphalt Company entered into an agreement with the City of Kansas City, Missouri whereby the City contracted with Superior Asphalt Company to build and construct the surface of the roadway known as Stark Avenue specially from 2600 Stark Avenue to 3100 Stark Avenue.

19. Plaintiff, Tammy M. Coleman, incorporates by reference paragraphs 8 and 14 of Counts I and II as though fully stated herein.