906 F.Supp. 530 (1995)
Charles IRWIN, et al., Plaintiffs,
v.
HOOVER TREATED WOOD PRODUCTS, INC., Defendant/Third-Party Plaintiff,
v.
C. Robert STEARNS, Bridger Plumbing and Heating Co., and E.C. Barton & Co. d/b/a Barton's of Sikeston, Third-Party Defendants.
No. 1:93CV76SNL.
United States District Court, E.D. Missouri, Southeastern Division.
November 7, 1995.
*531 Toni Griesbach, John J. Frank Partnership, St. Louis, MO, for Charles Irwin and Maggie Sue Irwin.
Dennis L. Callahan and Anthony F. Vaiana, Vaiana and Callahan, St. Louis, MO, for Hoover Treated Wood Products, Inc., defendant.
Louis J. Basso, Rabbitt and Pitzer, St. Louis, MO, John L. Oliver, Jr., James M. Ponder, Oliver and Oliver, Cape Girardeau, MO, and Joseph P. Fuchs, Sikeston, MO, for C. Robert Stearns, Bridger Plumbing & Heating, Barton's of Sikeston, and E.C. Barton & Company dba Barton's of Sikeston.

MEMORANDUM
LIMBAUGH, District Judge.
Plaintiffs have filed a multi-count products liability action seeking to recover damages for injuries sustained by plaintiff Charles Irwin while making repairs on the Sikeston Middle School's roof. Plaintiffs essentially allege that plaintiff Charles Irwin suffered his injuries when the roof collapsed due to the defective and unreasonably dangerous condition of the fire-resistant treated plywood sheathing (hereinafter referred to as FRT plywood sheathing) manufactured and sold by Hoover, the negligence of Hoover in the manufacture and sale of the wood, and Hoover's breach of warranty. Hoover has filed a three-count complaint seeking indemnification and/or contribution by the third-party defendants. This matter is before the Court on third-party defendant Bridger Plumbing and Heating Co.'s (hereinafter referred to as simply Bridger) motion for summary *532 judgment (# 55), filed April 24, 1995. Response deadline passed without any responses being filed. On September 28, 1995 the Court entered a show cause order directing the plaintiffs Irwin and defendant/third-party plaintiff Hoover to file a response to the instant motion no later than October 11, 1995. On October 6, 1995 defendant/third-party plaintiff Hoover filed its response (as of today's date, plaintiffs have failed to file a response). Subsequent responsive pleadings have been filed by third-party defendant Bridger and defendant/third-party plaintiff Hoover. This cause of action had been set on the Court's October 23, 1995 trial docket, but was recently removed from that docket.
Courts have repeatedly recognized that summary judgment is a harsh remedy that should be granted only when the moving party has established his right to judgment with such clarity as not to give rise to controversy. New England Mut. Life Ins. Co. v. Null, 554 F.2d 896, 901 (8th Cir.1977). Summary judgment motions, however, "can be a tool of great utility in removing factually insubstantial cases from crowded dockets, freeing courts' trial time for those that really do raise genuine issues of material fact." Mt. Pleasant v. Associated Elec. Coop. Inc., 838 F.2d 268, 273 (8th Cir.1988).
Pursuant to Fed.R.Civ.P. 56(c), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 467, 82 S.Ct. 486, 488, 7 L.Ed.2d 458 (1962). The burden is on the moving party. Mt. Pleasant, 838 F.2d at 273. After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the facts. Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986). Instead, the nonmoving party bears the burden of setting forth specific facts showing that there is sufficient evidence in its favor to allow a jury to return a verdict for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).
In passing on a motion for summary judgment, the court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts. Buller v. Buechler, 706 F.2d 844, 846 (8th Cir.1983). The court is required to resolve all conflicts of evidence in favor of the nonmoving party. Robert Johnson Grain Co. v. Chem. Interchange Co., 541 F.2d 207, 210 (8th Cir.1976). With these principles in mind, the Court turns to an examination of the facts.
The following is a recitation of facts germane to the issue(s) raised by the summary judgment motion.
On or about March 21, 1984 Bridger entered into a contract with the Scott County R-6 School District for the construction of a new middle school facility. The specifications and plans for the construction of the middle school were prepared by an architect for the School District, Robert C. Stearnes. These specifications and plans were given to Bridger. The specifications and plans called for fire-retardant plywood sheathing to be used in the construction of the roof of the building. Bridger incorporated into the roof of the building fire retardant plywood sheathing treated by Hoover. Specifically, the wood used in the roof was Exposure 1 plywood treated by Hoover with "Pro-Tex" for fire retardation purposes.
The building was completed by Bridger in April of 1985. Upon completion Stearnes certified the project as completed to his satisfaction and the building was accepted by the Scott County R-6 School District.
Nearly five (5) years later, on December 19, 1990, plaintiff Charles Irwin, fell through the roof of the school and was injured. When the building was constructed in 1984-85, Charles Irwin was an employee of Bridger and in fact, worked on the subject roof. However, he left the employ of Bridger shortly after completion of the middle school project. Approximately eighteen (18) months later he went to work for the Scott *533 County R-6 School District. He was in the employ of the School District when he fell through the roof while engaging in repair work.
In its third-party complaint, Hoover denies any wrongdoing in connection with plaintiff Charles Irwin's accident. However, if found liable in this case, it seeks contribution from Bridger[1] alleging that Bridger was negligent in the construction of the school, i.e. the roof, because:
(a) It failed to order and secure the FRT plywood with an exterior durability rating when such plywood was intended to be used by the architect;
(b) It failed to determine from the architect the durability rating of the FRT plywood to be used;
(c) It used FRT plywood which did not comply with the specifications;
(d) It failed to examine and inspect the FRT plywood to assure that it met the specifications;
(e) It failed to store the plywood on the construction site in accordance with the specifications and recommendations of the supplier;
(f) It constructed the roofing system without adequate ventilation to dissipate heat and moisture.
Bridger contends that the building, i.e. the roof was constructed according to the specifications and plans of Stearnes (the architect), and that upon completion of the building it was certified and accepted by Stearnes (on behalf of the Scott County R-6 School District). Bridger contends that it owed no duty of care to Irwin once the building was completed, certified, and accepted by the School District; thus, actionable negligence does not exist between the plaintiffs and Bridger. Since actionable negligence does not exist between the plaintiffs and Bridger, Bridger contends that Hoover's claims for contribution must fail. Hoover contends that Bridger's actions constitute an exception to the "acceptance doctrine" and that material issues of fact prevent the granting of summary judgment to Bridger.
A federal court exercising diversity jurisdiction must apply the substantive law of the forum state. Wolgin v. Simon, 722 F.2d 389, 391 (8th Cir.1983); Coello v. Tug Mfg. Co., 756 F.Supp. 1258, 1262 (W.D.Mo.1991).
Under Missouri law, the principle of contribution[2] embodies the idea that when two or more parties are responsible for injury to a third party, the tortfeasor against whom a judgment has been rendered is entitled to recover a proportional share of the judgment from the other tortfeasors whose negligence contributed to the injury and who are liable to the original plaintiff. Missouri Pacific Railroad v. Whitehead & Kales, 566 S.W.2d 466, 468 (Mo. banc 1978); Sweet v. Herman Bros., 688 S.W.2d 31, 32-33 (Mo. App.1985). Consequently, the principle of liability for contribution requires joint liability to the original plaintiff by each of the alleged tortfeasors. In order for a party to maintain an action for contribution, actionable negligence must exist between the original plaintiff and the tortfeasor from whom contribution is sought. Osburg v. Gammon, 704 S.W.2d 268, 269 (Mo.App.1986). "In the absence of actionable negligence toward the plaintiff, an alleged tortfeasor is not liable to other defendants for contribution ... Unless the plaintiff has (or had) a cause of action *534 against the person from whom contribution is sought, that person is not liable for contribution to other defendants." Sweet v. Herman Bros., at 32-33.
In order for Hoover to maintain its claim for contribution against Bridger, actionable negligence must exist between the plaintiffs Irwin and Bridger. After careful consideration of the matter, the Court determines that actionable negligence does not exist between the Irwins and Bridger as a matter of law.
In any action for negligence, a plaintiff must establish 1) that a defendant had a duty to the plaintiff; 2) that the defendant failed to perform that duty; and 3) the defendant's breach was the proximate cause of the plaintiff's injury. Hecker v. Property Ins. Placement Fac., 891 S.W.2d 813, 816 (Mo. 1995); Martin v. City of Washington, 848 S.W.2d 487, 493 (Mo.1993). "In a negligence action, whether a duty exists is entirely a question of law for the court." Morrison v. Kubota Tractor Corp., 891 S.W.2d 422, 425 (Mo.App.1994).
Bridger contends that it no longer owed any duty of care to third persons injured on account of the Sikeston Middle School building once the project was completed and accepted by the Scott County R-6 School District. Hoover contends that Bridger is not entitled to summary judgment because genuine issues of material fact remain as to the exceptions to the "acceptance doctrine".
Pursuant to Missouri caselaw, the "acceptance doctrine" provides that a general contractor is not liable to third parties, who have no contractual relationship with the contractor, for injuries sustained allegedly due to the contractor's negligence in performance of his/her contractual duties, once the work has been accepted by the owner. Gast v. Shell Oil Co., 819 S.W.2d 367 (Mo.1991); Roskowske v. Iron Mountain Forge Corp., 897 S.W.2d 67, 71 (Mo.App.1995); Coleman v. City of Kansas City, 859 S.W.2d 141, 144-47 (Mo.App.1993); McCoy v. Simon Sign Erection, 858 S.W.2d 827, 828-29 (Mo.App. 1993); Gruhalla v. George Moeller Construction Co., 391 S.W.2d 585, 597 (Mo.App.1965). However, an exception to this rule has been recognized. The exception imposes liability on the contractor after acceptance by the owner wherein 1) the defect is imminently dangerous to others; 2) the defect is so hidden that a reasonably careful inspection would not reveal it; and 3) the contractor knows of the defect, but the owner does not. Gast v. Shell Oil Co., at 370; Begley v. Adaber Realty & Inv. Co., 358 S.W.2d 785, 791[6-8] (Mo.1962); Roskowske, at 72; Coleman, at 147; McCoy, at 828.
Hoover contends that the exception should apply in this case. As to the first prong of the exception, it argues that since Charles Irwin "unexpectedly" fell through the roof, a question of fact exists as to whether the roof was "imminently dangerous" to the safety of others.
Construction may be considered "imminently dangerous" if the "construction is such that danger may be anticipated therefrom by reason of its very defects it is imminent or ... inherent, even though it does not occur immediately or soon after use." Begley, at 791 quoting Colbert v. Holland Furnace Co., 241 Ill.App. 583, 1. c. 592 (1926). It is the imminent or inherent danger in the construction which creates the foreseeability of injury to third persons not in privity with the contractor which lies in the heart of the exception to the acceptance doctrine. Coleman, at 144.
Mr. Irwin fell through the roof almost six (6) years after it had been completed. Hoover contends that Bridger ordered and used the wrong plywood sheathing for the roof. It argues that Stearnes intended that Exterior grade plywood be used, but that Bridger used Exposure 1 grade instead. Hoover fails in its brief to identify the defect which rendered the roof "imminently dangerous" but it appears that Hoover's main argument is that the defect was in the installation of plywood sheathing unsuitable for constant exposure to harsh weather conditions.
It is undisputed that Stearnes provided the plans and specifications for the construction of the roof. The specifications prepared by him provided for use of either Exterior grade, Exposure 1 grade, or Exposure 2 grade plywood for the roof decking. *535 Stearnes deposition, pg. 63-64, Exhibit A. It is undisputed that Bridger used Exposure 1 grade plywood sheathing. Stearnes made periodic inspections of the materials used and the manner in which the building, including the roof, was being constructed. Stearnes deposition, pg. 64. He testified that he certified the work after completion because "everything seemed to be in order". Stearnes deposition, pg. 18. Charles Irwin testified that he actively participated in the construction of the roof, including the installation of the plywood sheathing. Irwin deposition, pgs. 31-32, 95. He further testified that he believed that the roof had been constructed in a reasonable and workmanlike manner and that he never observed anything out of the ordinary. Stearnes deposition, pg. 95. Several people knowledgeable of the construction industry testified that Bridger's use of exposure 1 plywood was appropriate and suitable for ordinary use in a commercial roof. A.L. Debonis deposition, pg. 249; Lloyd Stoner deposition, pg. 74; James Herndon deposition, pg. 11; Gary Foreman deposition, pg. 116.
There is no evidence before this Court which shows that the roof was constructed in such a way or used materials which created a defect that posed an imminent danger to the safety of others. The accident happened six (6) years after the construction was completed. The specifications clearly provided for the choice of three types of plywood to be used. It is undisputed that Bridger used one of these three types. The record shows that the choice of plywood was considered appropriate by industry standards.
Hoover spends considerable time arguing that Stearnes intended that Exterior grade plywood be used and that Bridger should have consulted him before ordering and using the Exposure 1 grade plywood. The Court agrees with Bridger that this presupposes some legal duty upon Bridger to either be a mind-reader or question each and every specification with the architect on a regular basis. Hoover fails to cite any caselaw which creates such a duty. In Gast, the Missouri Supreme Court refused to impose such a duty finding that the general contractor could not be faulted for using materials in accordance with the specifications. Gast, at 370-371; see also, Bloemer v. Art Welding Co., 884 S.W.2d 55, 56 (Mo.App.1994) (contractor's compliance with customer's plans and specifications, with limited exceptions, is complete defense to strict liability and negligence claims of design defect). Hoover's own architectural expert, Mr. Foreman, testified that he expected contractors to follow the architect's specifications and design plans. Foreman deposition, pg. 116.
Bridger's use of the Exposure 1 grade plywood did not create an "imminently dangerous" situation. See, Begley, supra. (continuing danger that heavy ceiling pipes would fall was clearly established by ample testimony that the ductwork had been installed without supporting hangers or being attached to joists).
Hoover next contends that the "improper" plywood was installed under shingles, batting insulation, and rigid insulation board, therefore it was so hidden that a reasonable inspection would not have disclosed it.
The evidence before the Court shows that plaintiff Charles Irwin was actively involved with and regularly observed the installation of the plywood. It is undisputed that Hoover certified delivery of 1445 pieces of one-half inch × 4 × 8 CDX plywood to the Sikeston Middle School project. Bridger Exhibit C. Stearnes testified that he made periodic inspections of the materials used and the construction in progress. Lloyd Stoner, the man responsible for installing the roof shingles, testified that he personally observed the plywood sheathing installed by Bridger prior to the installation of the roofing shingles. Stoner deposition, pgs. 74-75. He testified that he did not believe that Bridger did anything wrong in the installation of the plywood which would have been detrimental to the roof system. Stoner deposition, pg. 75. The undisputed evidence shows that the type of plywood installed was not a "hidden defect"; that several people, including Hoover's plant manager and the architect for the Sikeston School District, knew that Exposure 1 grade plywood sheathing was installed under the roof shingles. There is no evidence before the Court that a "reasonable inspection" *536 would not have revealed the existence of the Exposure 1 grade plywood sheathing.
Finally, Hoover contends that because Stearnes intended that Exterior grade plywood be used on the roof and Bridger used Exposure 1 grade plywood, it was aware of the "defect". This argument is meritless.
Firstly, the fact that Stearnes intended for another type of plywood sheathing to be used is immaterial. The undisputed fact is that he specified three choices of materials and Bridger used one of these choices. He further admitted that it was his responsibility to make periodic inspections of the materials used to make sure they were in compliance with the specifications, and that he never brought it to anyone's attention that a different type of plywood should have been used in the construction of the roof.
Secondly, Hoover concludes knowledge of the defect by Bridger without presenting any facts to support this conclusion. It appears to argue that since there had never been complaints about Hoover's Exterior grade plywood and problems had been identified with the usage of Exposure 1 grade plywood treated with Pro-Tex in roofs, that somehow Bridger should have known this and not used Exposure 1 grade plywood. This argument lacks merit because by Hoover's own admission these problems with Exposure 1 grade plywood "began developing in the late '80s". Hoover's response, pg. 8. Hoover provides no evidence that in 1984-85 Bridger knew or should have known about the "developing problems" with Hoover's Exposure 1 grade plywood when used in roofing systems. Furthermore, if such information was readily available or known in the construction industry, Hoover provides no evidence as to why it should have been known by Bridger but not by Stearnes. There simply is no evidence that Bridger ever knew that Exterior grade plywood and not Exposure 1 grade plywood should have been used either due to Stearnes' preference or consumer complaints.
Given the above reasoning, this Court finds that the imminently dangerous exception does not apply in this case, and that under the acceptance doctrine Bridger did not owe a duty of care to Charles Irwin. Since a viable claim of actionable negligence does not exist between plaintiffs Irwin and Bridger, Hoover's claim for contribution (as well as indemnity) must also fail.[3]
Having found no material issues of fact existing regarding the application of the acceptance doctrine to the matter at hand, third-party defendant Bridger is entitled to summary judgment as a matter of law.
As a final note, which does not affect the Court's ruling, the Court wishes to address an issue erroneously raised by Bridger in a responsive pleading. In its reply brief (# 68), filed October 20, 1995), Bridger argues that because Charles Irwin had been in its employ at the time of the construction of the Sikeston Middle School, Charles Irwin cannot now maintain a cause of action for negligence against Bridger except under the Workers Compensation Act. It fails to cite a single case under Missouri law which supports this proposition.
Missouri's Workers Compensation Law provides, in relevant part:
1. Every employer subject to the provisions of this chapter shall be liable, irrespective of negligence, to furnish compensation under the provisions of this chapter for personal injury or death of the employee by accident arising out of and in the course of his employment, and shall be released from all other liability therefor whatsoever, whether to the employee or any other person.
§ 287.120.1 R.S.Mo.
Missouri's Worker Compensation Law further defines employee "to mean every person in the service of any employer, as defined in this chapter, under any contract of hire, express or implied, oral or written, or under any appointment or election, including executive officer of corporations." § 287.020.1 R.S.Mo.
The purpose of Missouri's Workers Compensation Law is to compensate injured *537 employees for injuries arising out of and in the course of their employment; thus, the relationship of employer-employee must exist, at the time of the accident, to make the accidental injury compensable. Once this relationship terminates, the liability of the employer for the accidental injury to the employee ceases. Griffin v. Sinks Ford Sales, 413 S.W.2d 856 (Mo.App.1967); McQuerrey v. Smith St. John Mfg., 240 Mo.App. 720, 216 S.W.2d 534 (Mo.App.1948).
It is undisputed that at the time of the accident Charles Irwin was employed by the Scott County R-6 School District. Although Charles Irwin had been employed by Bridger at the time of the construction of the Sikeston Middle School, this employment relationship clearly terminated several years prior to his accident. Once Charles Irwin left Bridger's employ, Bridger was no longer liable to Irwin under Missouri's Workers Compensation Law. Consequently, if not for other considerations, Bridger and Hoover could have been considered joint tortfeasors.
NOTES
[1] Its claim against Bridger is contained in Count II of Hoover's Amended Third-Party Complaint (# 36), filed August 1, 1994.
[2] In its third-party complaint, Hoover uses the words "indemnity" and "contribution" interchangeably; however, they are two separate and distinct concepts. Under Missouri law, a claim for indemnity may be maintained in one of two ways: an express agreement to indemnify or an implied (non-contractual) agreement to indemnify. In re Broadview Lumber Co., Inc., 168 B.R. 941, 966-67 (Bkrtcy.W.D.Mo.1994) (reviews the distinction between indemnity and contribution). Hoover does not claim that a written contract for indemnity ever existed between it and Bridger. As for implied indemnity, its basis for existence is similar to that for a claim for contribution; i.e. presupposes actionable negligence by both the third-party plaintiff and the third-party defendant to the original defendant. In the instant matter, neither party briefed the issue of indemnity. Frankly, the Court considers the claim of indemnity to be abandoned. However, even if not abandoned, Hoover fails to maintain a claim for implied indemnity for reasons to be explained pursuant to its claim for contribution.
[3] Since the Court finds that Bridger is entitled to protection from liability under the acceptance doctrine, there is no need to address the specific acts of alleged negligence.